STATE of Delaware

v.

Beverly RAMIREZ and Maria T. Devers.

Superior Court of Delaware,
New Castle County.

Submitted Nov. 7, 1975.

Decided Feb. 6, 1976.

Richard J. McMahon, Asst. Atty. Gen., Wilmington, for the State.

Stephen B. Potter, and James F. Harker, Wilmington, for the defense.

LONGOBARDI, Judge.

This is a motion by Defendants to suppress evidence seized from their premises on the grounds that the allowance of the use of a pen register (a device for monitoring telephone numbers and search warrant were issued illegally and without probable cause.

On July 2, 1975 a Justice of the Peace signed an order allowing the use of a pen register device on the telephone number listed for Defendants Beverly Ramirez and Maria T. Devers based upon an affidavit and application of Detective Larry W. Slover of the Delaware State Police. A pen register device mechanically records incoming and outgoing telephone numbers without any aural interception of communication. *U. S. v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

As a result of information received from the pen register, as well as other information, another Judge of the Court of Common Pleas issued a search warrant on July 8, 1975. A search of Defendants' premises was conducted on the same day and evidence alleged to be involved with illegal gambling was seized. Defendants were arrested and charged with advancing gambling in the second degree in violation of 11 Del.C. 1401(3).

■ Initially, there is a dispute as to the validity of an order for a pen register issuing from a Justice of the Peace. Both the State and the Defense agree that a pen register does constitute a search and seizure and, therefore, the government must establish probable cause prior to an order for its issuance. The Defendants contend, however, that only a Superior Court Judge is authorized to receive applications for orders authorizing pen registers. Defendants base this argument on 11 Del.C. 1336 which is the Delaware wiretap law. This section is inapplicable. 11 Del.C. 1336 (a)(5) limits the applicability of the general wiretap section to "aural acquisitions" of communications. Since the pen register is not an aural acquisition, 11 Del.C. 2304 remains as the controlling statute defining who may authorize and issue a search warrant. In accord with *Section 2304,* a Justice of the Peace is, therefore, authorized to issue an order for the establishment of a pen register.

■ The major thrust of Defendants' objection to the pen register order goes to the substance of the affidavit and application. The facts and allegations of the affidavit must be measured against the scope of the protection against unreasonable searches and seizures guaranteed by the *Fourth Amendment.* In particular, the determination of the adequacy of the application for this search warrant is controlled by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. U. S.,* 393 U.S. 410, 89 S.Ct 584, 21 L.Ed. 2d 637 (1969).

■ Where a search warrant is based in part on a hearsay statement of an informer, the Supreme Court has established certain guidelines to insure that a judge can assess independently the value of the information upon which the police wish to base the issuance of the search warrant. The resultant "two-pronged" *Aguilar* (supra) test is designed to determine the reliability of the informant and the validity of the specific information. Although both aspects of the test need to be established by factual allegations in the warrant application, the setting forth of the underlying circumstances supporting the validity of an informant's tip to justify issuing a search warrant is particularly critical. In order for a magistrate to make a neutral and detached conclusion that probable cause exists to believe that a crime is being committed, he must have available some information to corroborate the tip. In other words, the application for the warrant must contain sufficient facts to corroborate and substantiate the hearsay nature of the informant's accusation.

According to the application for the pen register warrant, the affiant on April 21, 1975 was given information that the Defendants were receiving bets at a given telephone number and a given address. (There is no challenge to the first part of the *Aguilar* (supra) test—the reliability of the informant.) In early May, the police became aware of the fact that Defendants had moved and had a new telephone number. This information was verified. In addition, on June 6, 1975 the informant told the affiant that Defendants were "back in business." The police established surveillance over the new address. They observed two vehicles registered to the Defendants parked in the driveway that were not moved between the hours of 11:00 a. m. and 3:00 p. m. on the days involved.

■ The affidavit contained other information which went merely to the beliefs and conjectures of the police officer. In particular, paragraphs B, D, E, M, N and

parts of L are not factual support. The expertise and beliefs of the affiant are not corroborative of an informant's hearsay. *Nathanson v. U. S.*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). Paragraph G is hearsay from an unknown and hence unreliable informant and, therefore, has no independent validity.

■■ The informant's initial tip therefore is saved by the statement in the affidavit that he (the informant) had himself placed bets with Defendants. This solves the *Spinelli* (supra) problem where there was no explanation of the manner in which the informant came upon the knowledge. The *Spinelli* (supra) warrant was held invalid because there were not facts sufficient to separate the tip from casual rumor or general accusation. *Spinelli*, supra, 89 S.Ct. at 589. The Delaware case of *Wilson v. State*, Del.Supr., 314 A.2d 905 (1973) clearly establishes the rule that personal and criminal involvement of the informant with the defendant satisfies the need for corroboration.

■ Defendants, however, contend that the informant's alleged involvement with the Defendants was too remote in the past and, therefore, stale. The recent case of *Mayer v. State*, Del.Supr., 320 A.2d 713 (1974) coupled with the Federal Court Decisions of *U. S. v. Johnson*, 10th Cir., 461 F.2d 285 (1972) and *U. S. v. Harris*, 3rd Cir., 482 F.2d 1115 (1973) establish the guidelines for determining the effect of the passage of time between a tip and the issuance of the warrant. The basic parameters are that the mere passage of time is not enough to invalidate the warrant. Clearly where the alleged criminal activity is of a potentially continuing nature (such as bookmaking) the passage of time will not necessarily have a significantly minimizing effect on the reliability of the tip. *U. S. v. Johnson*, supra at 287. The period of time that elapsed in the instant case between the initial tip and the warrant is over two months. Moreover, since the date of the first contact, the Defendants have changed address and their telephone number. Absent the second contact, it would be difficult to consider the April 21 information sufficiently viable for showing probable cause for a warrant on July 2 at a new address and a new telephone number.

■ The question, therefore, becomes one of reliability of the information of June 6. If the second tip, that the Defendants were "back in business," meets the *Aguilar-Spinelli* (supra) tests, it would serve to avoid the staleness of the first information. However, the information of June 6 that Defendants were back in business is hearsay that is uncorroborated. This tip fails where the earlier tip succeeded in that there is no allegation of any personal knowledge of the informer that criminal activity was taking place at that time and at that location.

Other information that the State claims verifies the tip is either in itself hearsay (paragraph G) or merely innocuous activity not indicative of criminal conduct (paragraphs J, K, I, M and O). Innocuous activity can only be corroborative where it is provided by the *informant* such as to bolster *his* reliability. *Draper v. U. S.*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The activity observed by the police does not provide any underlying support to the informant's reliability.

It must, therefore, be concluded that the application and affidavit for the pen register warrant must fail for want of probable cause. The only facts in the affidavit sufficiently reliable were over ten weeks old at the time of the warrant application. Since the date of the first tip, the affidavit is barren of facts upon which a magistrate could, within Constitutional limits, issue a warrant for any search and seizure.

The issuance of the search warrant on July 8, 1975 for the Defendants' home was dependent upon the results of the pen register as well as the identical assertions in pen register warrant. Since the pen regis-

ter order is herein held illegal, its suppression must invalidate the search warrant. All evidence seized as a result of the pen register or the house search must be suppressed.

It is so ordered.