STATE of Delaware, Plaintiff below,
Appellant herein,

v.

Jerry G. POLI and Viola Taylor, Defendants below, Appellees herein.

Supreme Court of Delaware.

Submitted May 16, 1978.

Decided July 6, 1978.

Charles K. Meuse, Deputy Atty. Gen., Wilmington, for plaintiff below, appellant.

L. Vincent Ramunno, Lawrence A. Ramunno and James F. Kipp, Wilmington, for defendants below, appellees.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendants were charged with possession with intent to deliver a non-narcotic Schedule I controlled substance, marijuana, in violation of 16 *Del.C.* § 4752; defendant Poli was separately charged with possession of a deadly weapon during the commission of a felony (11 *Del.C.* § 1447). The Superior Court granted defendants' motion to suppress certain physical evidence, including the marijuana, seized by Drug Enforcement Agents in a search which the Court determined was unlawfully conducted. The State certified that the evidence suppressed was essential to the prosecution of the case, and, therefore, the Court dismissed the indictments; the State appeals pursuant to 10 *Del.C.* § 9902.* We reverse.

I

The only witnesses who testified at the suppression hearing were Agents William Glanz and William R. Boulden of the United States Department of Justice Drug Enforcement Administration. Their undisputed testimony established the following:

On February 7, 1977, Agent Glanz had a conversation with an unidentified informant (hereinafter Informant Number 1). This informant told Agent Glanz that a person named Charles Kevin Kelly, and others, were going to "rip-off" a large quantity of marijuana from an unknown large-scale marijuana dealer from New Castle, Delaware. The informant and Agent Glanz drove to an area in Pennsylvania near Chadds Ford where the theft was to occur. While there, Agent Glanz discovered a disabled truck on a remote road. A license check with the Delaware Bureau of Motor Vehicles revealed that this truck belonged to a Wallace Axselle whose son, Jerry Axselle, of New Castle, Delaware, was known to be a large-scale marijuana dealer.

Informant Number 1's knowledge of this future occurrence was obtained from a third party whose identity is unknown to Agent Glanz. Informant Number 1 had not given any previous information leading to an arrest or conviction but Agent Glanz had followed the tip based on Kelly's reputation for transactions of this sort. This reputation, coupled with the fact that the Axselle truck was located on a remote road in the early morning hours, caused Agent Glanz to rely on the accuracy of the information supplied by Informant Number 1.

On February 11, 1977, Agent Boulden talked to a second informant (hereinafter Informant Number 2). This informant told Agent Boulden that Charles Kevin Kelly, Jerry Poli and three other unknown individuals had stolen 700 pounds of marijuana from two individuals. During the transac-

---

* 10 *Del.C.* § 9902 reads in full as follows:
§ 9902. Appeal as of right.
(a) The State shall have an absolute right to appeal to an appellate court a final order of a lower court where the order constitutes a dismissal of an indictment or information or any count thereof, or the granting of any motion vacating any verdict or judgment of conviction where the order of the lower court is based upon the invalidity or construction of the statute upon which the indictment or information is founded or the lack of jurisdiction of the lower court over the person or subject matter.
(b) When any order is entered before trial in any court suppressing or excluding substantial and material evidence, the court, upon certification by the Attorney General that the evidence is essential to the prosecution of the case, shall dismiss the complaint, indictment or information or any count thereof to the proof of which the evidence suppressed or excluded is essential. Upon ordering the complaint, indictment or information or any count thereof dismissed pursuant to the Attorney General's certification, the reasons of the dismissal shall be set forth in the order entered upon the record.
(c) The State shall have an absolute right of appeal to an appellate court from an order entered pursuant to subsection (b) of this section and if the appellate court upon review of the order suppressing evidence shall reverse the dismissal, the defendant may be subjected to trial.

tion, the two victims of the theft were shot. Agent Glanz verified through newspaper accounts and by discussions with the Wilmington Police that Wallace and Jerry Axselle had been shot.

Informant Number 2 told Agent Boulden that part of the stolen marijuana was stored in an apartment near Route 273 in New Castle, and that the apartment was occupied by Jerry Poli and Viola Taylor. Informant Number 2 also told Agent Boulden that Ms. Taylor owned a red Ford van. Poli's residence was verified as apartment 9D, Oak Hollow Apartments.

Subsequently, Informant Number 2 informed Agent Boulden that Jerry Poli would be delivering a quantity of marijuana to Summit Street in New Castle County sometime after 5 o'clock on February 18, 1977. This information was obtained by Informant Number 2 from an undisclosed third party.

On February 15, 1977, another informant (hereinafter Informant Number 3) told Agents Glanz and Boulden that Poli and Taylor were living in Oak Hollow Apartments, confirmed the previous information about the theft and said that an undisclosed third party told him that part of the stolen marijuana was stored in Poli and Taylor's apartment.

The agents gave credence to the information received from Informants 2 and 3 because both had given information leading to two arrests in the past six months. After February 18, 1977, one of these arrests did result in a conviction and the other arrest was pending at the time of the suppression hearing.

On February 18, 1977, Informant Number 2 told Agent Glanz that defendant Poli would be making a large delivery of marijuana to an address on Summit Avenue in the Richardson Park section of New Castle County, Delaware, after 5 o'clock. The informant was not aware which vehicle Poli would be driving.

Agents Glanz, Boulden and members of the Wilmington and Delaware State Police started surveillance of the Poli and Taylor apartment about four o'clock p. m. on February 18, 1977. Around 4:30 p. m., the van arrived at the apartment. At 5:50 p. m., the van drove out of the apartment complex and returned five minutes later.

At 6:30 p. m., the surveillance was discontinued and the Wilmington and Delaware State Police left. While Boulden and Glanz were discussing the case and preparing to leave, Informant Number 2 called Glanz and told him the delivery had been delayed until after 7 o'clock.

At 6:45 p. m., the red Ford van left the Oak Hollow Apartment complex. The van then travelled to a Photo Mat store in a nearby shopping center. From the Photo Mat store, Poli drove to a drug store and then back to the Photo Mat store where he picked up defendant Taylor at 7:35 p. m. From there, he travelled to Summit Avenue in Richardson Park where he stopped and parked the van in the 500 block. The agents parked behind the van, got out of their car and approached the van with guns drawn. The agents were aware that Poli had a previous armed robbery conviction and that Taylor was under indictment for kidnapping.

Taylor and Poli were ordered to exit the van and to raise their hands. Taylor complied immediately, but Poli ignored several orders and started reaching under the left side of his coat with his right hand. Poli was again ordered to exit the van and this time he complied.

Poli was patted down and a loaded, thirty-eight caliber revolver was found on his left hip. The defendants were then handcuffed.

Agent Glanz testified that, in order to protect himself, he leaned into the van to look and see whether it was occupied by anyone else. At this point, he saw a shopping bag, open at the top, in the center and slightly behind the two front seats. He looked in the bag and saw a quantity of green leafy material which he believed to be marijuana. Agent Boulden testified that they could have, but did not, obtain a search warrant for the van at the time the defendants were handcuffed. They did not

do so because when Agent Glanz leaned into the van the marijuana was in plain view. Agent Glanz testified earlier that it always was their intention to search the van.

After leaving the van, Agent Glanz informed the defendants that they were under arrest and gave them the *Miranda* warnings. The defendants replied that they understood each right as it was given. After the warnings were given, Agent Glanz asked defendant Poli if he had a permit for the gun. Poli replied that he did not, that it belonged to a friend whose name he refused to divulge. The defendants were told that they were under arrest after the marijuana was seized.

The defendants were then taken to the New Castle County Police Department for processing. Apparently, the paperwork necessary in connection with the arrest was completed by about 10:30 p. m. It appears that another half hour was used to obtain a search warrant for the apartment. Both Taylor and Poli were taken to the apartment and were present when it was searched. The search was commenced at 12:01 a. m. and concluded at 12:55 a. m. The defendants were then taken to the Magistrate's Court at 1:00 a. m. and arraigned at 1:45 a. m.

The Superior Court also found as a matter of fact that a statement of defendant Poli was given to police in a meeting held at Poli's request during the period from 1:00 a. m. to 1:45 a. m.

## II

Defendants argued three points in support of their motion to suppress:

(1) the defendants' arrest was unlawful because there was no probable cause;

(2) the warrantless search of the van was unlawful;

(3) the statement given by defendant Poli was the result of an unreasonable and unnecessary delay between arrest and arraignment.

The central issue determinative of this appeal is whether the initial stop, or seizure, of defendants while travelling in their van was legal as based upon probable cause. Compare *State v. Prouse,* Del.Supr., 382 A.2d 1359 (1978). If the stop was proper the pat-down search of defendant Poli, which produced a loaded .38 calibre revolver, was a legal protective frisk, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and the seizure of the marijuana was legal because either the contraband was in plain view of the agents and subject to seizure as contraband, *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Miller v. State,* Del.Supr., 310 A.2d 867 (1973); or, as the Superior Court decided, there were exigent circumstances justifying a warrantless search of defendants' vehicle. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Schramm v. State,* Del.Supr., 366 A.2d 1185 (1976). However, the Superior Court held as a matter of law that the agents did not have probable cause to make the initial stop. It is the propriety of that ruling to which we now turn.

## III

We quote the following language from *State v. Schramm,* supra, at 1189, which we find applicable to the case *sub judice:*

There is no more jealously guarded right than that of an individual under the Fourth Amendment to be free from unreasonable governmental intrusions upon his person and property; thus, searches and seizures conducted without a warrant—where there has been no prior determination of probable cause for the intrusion by some neutral and detached person—"are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. U. S.,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); but see *U. S. v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

One such exception, and the one applicable here, permits the warrantless search of an automobile where at the time of the "initial intrusion", i. e., when the car is stopped or "seized", there exists both probable cause to justify the seizure and exigent circumstances making it impracticable to secure a warrant beforehand. *Coolidge v. New Hampshire,* supra; *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Brinegar v. U. S.,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. U. S.,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Freeman v. State,* Del.Supr., 317 A.2d 540 (1974).

See also *State v. Prouse,* supra. While each case in which a question of probable cause is raised must, of course, be decided on its own facts, the legal principles explicated in *Schramm* have particular application in this similar situation.

■■■ Probable cause, as the phrase denotes, deals with probabilities, and the determination of whether probable cause to believe that criminal activity is afoot exists entails an examination of factual and practical considerations upon which reasonable persons act. *Brinegar v. U. S.,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Thus, probable cause may be based upon hearsay information, i. e., the infamous informant's tip, where it is shown that the tip is reliable and trustworthy. *Schramm v. State,* supra; *Shantz v. State,* Del.Supr., 344 A.2d 245 (1975). To achieve the legal status of trustworthiness the information must (1) have been acquired in a reliable manner, and (2) there must be sufficient reason for believing the informant is credible. *Spinelli v. U. S.,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Shantz v. State,* supra; *Garner v. State,* Del.Supr., 314 A.2d 908 (1973). The preferable "manner" evidence is personal observation by the informant of the reported illegal activity. However,

"in the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate [or in this case the Drug Enforcement Agent] may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. U. S.,* supra, 393 U.S. at 416, 89 S.Ct. at 589.

Only informants Numbers 2 and 3 gave information which directly implicated defendants in the marijuana deal, and we focus upon their credibility and the source of their information to determine if the Agents properly relied on their tips. One of the most common indicators of credibility is past cases of reliability. See *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). In *McCray* an informant was found to be credible because he had assisted in 24 to 25 arrests and numerous convictions. The reliability of informants Numbers 2 and 3 rests on two occasions, prior to their activity in the present case, where information they provided led to two arrests which had not culminated in convictions at the time of defendants' arrest. The Superior Court, apparently basing its decision on a quantitative analysis, decided that the prior occasions of reliability were insufficient to meet the credibility prong of the *Aguilar-Spinelli* test.

■■ Informants Numbers 2 and 3 both acquired their information from unidentified third parties, and, therefore, we agree with the Superior Court that the manner in which they gained their information is suspect. Compare *State v. Scramm,* supra. The Court in *Spinelli* was faced with a similar problem, and looked to the detail of the tip and independent corroboration thereof. The *Spinelli* Court referred to the case of *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) as the "benchmark" for judging the detail and corroboration requirements which evidence the reliability of the information. In *Draper* the Government's informer did not state the way in which he had obtained his information, but he did give such a detailed

description of impending criminal activity which, along with the independent verification of the details, constituted sufficiently reliable facts to satisfy the probable cause standard. We believe the same may be said of the information given by the second and third informants here.

Both informant Number 2 and 3 told police the name of the apartment complex where defendants resided, that defendant Poli had participated in the theft of a large quantity of marijuana, and that some of the drugs had been stored at defendant's apartment. Informant Number 2 told the Drug Enforcement Agents that defendant Taylor drove a red Ford van. The facts concerning the vehicle driven by defendants and their residence was verified by the Agents. The facts concerning the theft of the marijuana was to a certain extent verified by the Agents at an earlier time when, pursuant to a tip from informant Number 1, the Agents found the truck from which the marijuana was allegedly stolen, and when they received the report from Delaware Police that certain reputed drug traffickers had been shot in a robbery. The robbery had not yet been connected with the activities of the defendants, but the Agents were in the process of so doing.

Informant Number 2 on the day of the arrest told the Agents that defendant Poli would deliver an amount of marijuana to an unknown address on Summit Avenue in Richardson Park at approximately 5 p. m. Thereafter, informant Number 2 called the Agents to inform them of a change in plans, and that the delivery would take place at around 7 p. m. We find this last bit of information especially revealing, as only one with inside sources close to the actual deal itself could have known of the change. The detailed information provided by the informants was confirmed by the Agents when they followed defendants shortly after 7 p. m. to the 500 block of Summit Avenue.

Throughout the investigation the Drug Enforcement Agents received a continuous stream of information which in each case proved correct, with the exception, of course, of the tip concerning the time of delivery, an error which was subsequently rectified. It seems entirely logical then that a reasonable person would have had sufficient indicia of reliability to accept the information relating to the drugs in defendants' vehicle; therefore, we conclude that the Agents did have probable cause to stop defendants' van. As noted before, the stop being legal, the protective frisk and "plain view" search were also.

### III

Because the Superior Court suppressed the physical evidence, and the statement made by defendant Poli, no ruling was made on the allegation of unlawful delay between arrest and arraignment. The record shows that the delay was for at most a little over six hours, during which time the police were completing their paper work of their investigation. While the delay does not at first blush appear to have been unreasonable, compare *Warren v. State*, Del. Supr., 385 A.2d 137 (1978), we make no ruling on the issue. The case must be remanded for trial, and judicial restraint and the lack of a complete record concerning the question of delay requires us to reserve our decision so that the Superior Court may make an initial ruling.

\*     \*     \*     \*     \*     \*

REVERSED and REMANDED.