**STATE of Delaware**

v.

**Frank H. MILLER, Joseph Miller, and Debra Thorogood, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted May 7, 1982.

Decided June 22, 1982.

---

Ralph K. Durstein, III, Deputy Atty. Gen., Department of Justice, for State.

Carl Schnee, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants.

O'HARA, Judge.

As a result of a combined interstate investigation of gambling, the Delaware State Police ("Police") suspected that illegal gambling was being conducted through the use of the residential telephone of one Ollie Gordy ("Gordy"), a long time friend of Frank Miller ("Miller"), the focus of the investigation and one of the defendants herein.[1] The Police installed an electronic device, a dialed number recorder, ("DNR"), to monitor the frequency of phone calls made to and from the Gordy telephone. The DNR revealed an unusually large number of brief calls made in a short period, a

---

1. The other defendants joining in this motion to suppress evidence are Joseph Miller and Debra Thorogood.

pattern consistent with illegal gambling activity. The Police then applied to Superior Court for approval to intercept communications on the Gordy telephone. The Court authorized the interception, finding probable cause in a 77 page affidavit submitted by the State.

The affidavit included statements of the knowledge, experience and beliefs of the affiant police officers, reports of information received from cooperating police departments, information revealed by three undisclosed informants, profiles of the persons believed to be involved in the gambling ring, plus detailed surveillance reports, DNR analysis and subpoenaed toll call records. The Police asserted that they were unable to secure evidence to support a premises search warrant using normal investigative techniques and, thus, a wiretap was necessary.

Defendants allege that the wiretap affidavit did not provide evidence of probable cause for authorization. First, they contend that the warrantless DNR improperly established probable cause since the State failed to use normal investigative techniques to obtain evidence for a search. Second, they contend that the informant reports did not satisfy the basis of knowledge criteria for use of such information and that the other information in the affidavit did not corroborate the informant information. Third, they contend that the affidavit contained reckless falsehoods relating to probable cause. Finally, they contend that the search warrant issued as a result of the wiretap was executed in an unreasonable manner. Thus, the defend-

ants reason, the evidence gathered as a result of the wiretap and search must be suppressed. These arguments will be discussed *seriatim.*

THE DNR.

■ Electronic telephone surveillance is a search within the meaning of the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, the use of a pen register is not a search because that device does not intercept the contents of a communication. Therefore, a warrant is not a prerequisite to the installation of a pen register. *Smith v. Maryland,* 442 U.S. 735, 736, 99 S.Ct. 2577, 2578, 61 L.Ed.2d 220 (1979).[2] The State asserts that a pen register and a DNR are but two labels for the same device and, therefore, a warrant was not required before DNR use. Defendants contend that a DNR differs from a pen register because it records both in-coming and out-going telephone numbers as well as the duration of calls. A pen register is alleged to record only the number and frequence of out-going calls. Thus, defendants assert that a DNR acquires the contents of the communications it monitors and that a warrant was required here. They argue that the remedy of exclusion must be applied to this warrantless search and all evidence resulting from the use of the DNR (i.e., from the subsequent wiretap and premises search) must be suppressed.

■ This Court does not agree. Defendants do not allege that the DNR provided any information concerning the identity of the parties or the existence, substance, pur-

2. " 'A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed.' [Citations omitted]. A pen register is 'usually installed at a central telephone facility (and) records on a paper tape all numbers dialed from (the) line' to which it is attached." *Smith v. Maryland,* 442 U.S. 735, 736, 99 S.Ct. 2577, 2578, 61 L.Ed.2d 220 (1979).

As to wiretapping and electronic surveillance, 11 *Del. C.* § 1336(a)(3) defines content as: " 'Contents,' when used with respect to any

wire or oral communication, includes any information concerning the identity of the parties to such communication or the existence, substance, purport or meaning of that communication. This statute is based on 18 U.S.C. § 2510(8), which was construed in *Smith v. Maryland,* supra. Prior to the *Smith v. Maryland* decision, this Court, in *State v. Ramirez,* Del. Super., 351 A.2d 566 (1976), had accepted the agreement of counsel and, therefore, assumed that use of a pen register was a search within the meaning of the Fourth Amendment. However, in light of *Smith v. Maryland,* that assumption is no longer valid.

port or meaning of the communications monitored. In the absence of such evidence, the use of a DNR cannot be found to acquire the content as defined in 11 *Del. C.* § 1336(a)(3).[3] Therefore, the DNR evidence, in reference to the frequency of calls, was competent to show probable cause under the reasoning of *Smith v. Maryland,* supra.[4]

## USE OF NORMAL INVESTIGATIVE TECHNIQUES.

 The defendants' second contention is that the State was not justified in applying for a wiretap because it did not show that normal investigative techniques were unlikely to succeed, in accord with 11 *Del. C.* § 1336(h)(3)(f).[5] *See, State v. Wilson,* Del. Super., 306 A.2d 743 (1973), aff'd 343 A.2d 613 (1975). However, a review of the affidavit makes it clear that the State went to unusual lengths to document that surveillance was non-productive; it submitted 19 pages of synopsis material on 53 surveillance efforts, most occurring over a four month period. Further, it included extensive information derived from the Pennsylvania Crime Commission Report of 1980 and 17 Amer. Crim. L.R. 376 (1979–80) to support its claim that the use of infiltration techniques would be equally unavailing. These reports describe the closely knit inner circle of Miller's operation which consists of old friends and family members. These reports also document Miller's skill in using sham fronts and businesses to conduct operations, and explain how use of infiltration resulted in Miller's recent conviction and sentence for racketeering. Thus, the State's claim as to the uselessness of ordinary techniques in this case is amply supported and persuasive. *See United States v. Spagnuolo,* 9th Cir., 549 F.2d 705 (1977).

Further, neither statute nor case law mandates that all normal investigative techniques must be exhausted; they require only that such techniques "reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ." 11 *Del. C.* § 1336(h)(3)(f); *State v. Wilson,* supra. The Court finds that the affidavit provides sufficient evidence that such techniques were unlikely to succeed.

## INFORMANT INFORMATION.

 The third contention made by defendants is that the informants' tips did not provide probable cause for the issuance of a wiretap. Probable cause for a search warrant may be established through the use of hearsay evidence such as undisclosed informants' information. In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court established a two prong test to determine if probable cause for a warrant can be found in such a tip. The first prong of *Aguilar* is whether "there are sufficient reasons [in the affidavit] for believing the informant himself is credible or his information is trustworthy." *Sexton v. State,* Del. Supr., 397 A.2d 540 (1979). The second prong is whether there is a showing that "the informant acquired this information in a reliable manner . . .", *Id. See, also Schramm v. State,* Del. Supr., 366 A.2d 1185 (1976), *State v. Poli,* Del. Supr., 390 A.2d 415 (1978), *Garner v. State,* Del. Supr., 314 A.2d 908 (1973) and *Wilson v. State,* Del. Supr., 343 A.2d 613 (1975).

 As to the first prong "[t]he test for determining the reliability of an undis-

---

**3.** See note 2, supra.

**4.** This Court makes no finding as to whether a DNR can be adapted for use in acquiring the content of a communication. There is no evidence of such use in this record. 11 *Del. C.* § 1336(x)(1) (1981 West Interim Supp.) grants the power to Superior Court to authorize the use of a touch-tone decoder as well as a pen register.

**5.** 11 *Del. C.* § 1336(h)(3)(f) reads:
 "(h) Each application for an order authorizing or approving the interception of a wire or

oral communication shall be made in writing upon oath or affirmation and shall state:
 \* \* \* \* \* \*
 (3) A particular statement of the facts relied upon by the applicant, including:
 \* \* \* \* \* \*
 f. A full and complete statement as to whether or not other normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;"

closed informant is not his record in aiding arrests or convictions, but whether his information has ever been verified in the past." *Sexton v. State,* supra. In this case all three undisclosed informants were known to law enforcement officers who were cooperating with the Delaware State Police in this interstate investigation.[6] These officers verified the past accuracy of the informants' prior information. Reports of law enforcement officers can be presumed reliable. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Further, the affiants, themselves, investigated some of the details of the informants' tips and found these details accurate. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In addition, each tip was found to be consistent with the others. Thus, the informant information met the first prong of *Aguilar.*

 The second prong of *Aguilar* requires that the source of the informants' knowledge must be disclosed so that the judge can independently determine that the informant had a proper basis for his information. The tip must be more than a mere repetition of "casual rumor or general accusation." *State v. Ramirez,* Del. Super., 351 A.2d 566 (1976), *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Personal knowledge or observation, *State v. Poli,* supra, admissions against penal interest, *Wilson v. State,* supra, or relation of self-verifying details, *Marvel v. State,* Del. Supr., 290 A.2d 641 (1972), can satisfy this prong. In this case, only the information from one of the three informants, identified by affiants as "G–1", satisfies the second prong of *Aguilar.* G–1's observations come from personal association as a "heavy player" and are detailed as to names, places, times, and the gambling ring's division of responsibility. *See, Unit-*

 *ed States v. Sellers,* 5th Cir., 483 F.2d 37 (1973), *Carter v. State,* Del. Supr., 418 A.2d 989 (1980).

A judge could not have determined the basis of knowledge from the references to the other two informants. Their information is indistinguishable from rumor. Nevertheless, that other informant information need not be discarded if it is corroborated by other material in the affidavit. *Draper v. United States,* supra, *State v. Ramirez,* supra. *Contra, Stanley v. State,* Md. App., 19 Md.App. 507, 313 A.2d 847 (1974).

> [T]he Supreme Court has either used corroboration or assumed that it might be used in a variety of ways. Sometimes it appears that the court was seeking evidence of corroboration because no showing of the informant's basis of knowledge *(Draper, Ker, Adams),* sometimes because the informants' veracity was not otherwise established sufficiently *(Jones, Harris),* and sometimes for both reasons *(Aguilar, Spinelli).* Moreover, the type of information considered as tending to corroborate has ranged from the innocent conduct in *Draper* to that which created "strong suspicion" in *Ker.*[7] 1 LaFave, Search and Seizure, § 3.3 at 555 (1978) (hereinafter "LaFave").

*See generally* LaFave, § 3.3 at 561–65.

The DNR analysis, Pennsylvania Crime Commission Reports, and G–1's information all corroborate the other two informants' conclusion that a numbers bank was being operated from Ollie Gordy's telephone. The Police surveillance reports, though depicting innocent activity if viewed independently, also corroborate the interaction of Frank Miller and Ollie Gordy at this location. Thus, this informant information is supported by the other material and is suffi-

---

6. The affidavit notes assistance from the Chester, Pennsylvania, police, the F.B.I. and the Pennsylvania Crime Commission, among others.

7. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

cient to provide probable cause when the affidavit is read as a whole. *Mezzatesta v. State,* Del. Supr., 166 A.2d 433 (1960), *Pierson v. State,* Del. Supr., 338 A.2d 571 (1975), *Edwards v. State,* Del. Supr., 320 A.2d 701 (1974), *Dunfee v. State,* Del. Supr., 346 A.2d 173, 174 (1975).

FALSE STATEMENTS.

The defendants' third contention is that false statements were recklessly included in the affidavit and if these were excised under a *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), remand Del. Supr., 398 A.2d 783 (1979) rationale, the document would not provide probable cause. In *Franks v. Delaware,* the Court held that if a defendant makes a substantial showing of perjury or reckless disregard on the part of the governmental affiant, a hearing must be held. If the claim is proven, the false material is set to one side and if the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided. Essentially, a *Franks* hearing has already been held in this case.

 The allegedly false statements in the affidavit are primarily issues to be proven to the jury: whether Frank Miller made phone calls from Ollie Gordy's telephone; whether a numbers bank was located in Ollie Gordy's home; whether Ollie Gordy was handling daytime numbers activity; whether certain persons operated the bank; whether Debra Thorogood worked numbers activity at Improvizations.[8] Defendants' proof of the falsity of these statements primarily consists of negative testimony by the various accused. This testimony does not meet a preponderance of the evidence standard in light of the mass of details submitted by the State in its affidavit.

The two clearly false statements, that Frank Miller owns Improvizations and that Ollie Gordy teaches in Pennsylvania, are not material to probable cause in light of the true facts: Frank Miller's daughter owns

Improvizations and Ollie Gordy is a teacher in Delaware. These two statements were not made by the affiants themselves but, nevertheless, were corroborated through other, though erroneous, sources. Thus, there is no evidence of recklessness on the part of the affiants. *Arguendo,* should they be termed reckless, the excision of these statements would have no affect on a finding of probable cause from the remaining information.

Thus, even with the two erroneous statements excluded, the wiretap affidavit provided probable cause for authorization of electronic intervention. Evidence obtained through the tap was competent to provide probable cause for the subsequent search of Ollie Gordy's residence.

EXECUTION OF THE PREMISES SEARCH WARRANT.

 The defendants' final contention is that the search of Ollie Gordy's apartment was conducted in an unreasonable manner and evidence secured from it must be suppressed. The defendants standing to object to the manner of this search is problematical. They were not present when the search was conducted and they have asserted neither property rights in the premises nor possessory rights in the evidence seized. *See United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Thus, they had no expectation of privacy therein. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). They are attempting to assert the Fourth Amendment rights of a third party, their co-defendant, Gordy, who is not joined in this motion. Fourth Amendment rights are personal rights, *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and these defendants' Fourth Amendment rights have not been violated. Thus, the deterrent remedy of exclusion is not available to them.

---

**8.** "Improvizations" is a business owned by Patricia Miller Fontaine, who employed one of the defendants in this case, Vernice Heard.

Even if Gordy were to be joined, or Frank Miller held to have a privacy interest through his possession of a key, the claim would fail. Defendants maintain that the premises search was conducted in an unreasonable manner because the Police failed to announce themselves before entering the apartment. The knock and announce rule, *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), is founded upon several rationales: the avoidance of arbitrary violations of privacy, the protection of the police officer, and the prevention of unnecessary damage to property. 2 LaFave, supra, § 4.8(a) at 124. *See, also, State v. Carufel,* R.I. Supr., 112 R.I. 664, 314 A.2d 144 (1974).

■ In this case, as a result of surveillance, the Police were aware that Gordy had not returned from her job. They had taken the precaution of knocking on her door for three minutes, without response, before they entered with Miller's key. In a similar, though forcible entry, in *United States v. Brown,* 5th Cir., 556 F.2d 304 (1977), government agents had not announced their identity or purpose before forcing their way into an unoccupied building. The Court upheld the search, stating "[i]t is . . . futile to announce to an unoccupied building that federal officers have a search warrant. . . . It was not until they were reasonably certain that the dwelling was unoccupied that they executed their

warrant", *id.* at 305. *See United States v. Agrusa,* 8th Cir., 541 F.2d 690 (1976).[9] Thus, here, as in *United States v. Brown,* the rationale of the knock and announce rule was not contravened. An announcement would have been an exercise in futility, a "useless gesture", *Miller v. United States,* supra. The Police entry was not arbitrary, the safety of the officers was virtually assured and no damage was inflicted upon the Gordy premises. Therefore, the absence of an announcement did not render the search unreasonable and exclusion of evidence is not required. *See, also* 2 LaFave, § 4.8(b) at 128.

## CONCLUSIONS.

This Court finds that a warrant was not required prior to the installation of the DNR, that the affidavit was sufficient to provide probable cause for the interception of telephone communications and, finally, that the premises search was executed in a reasonable manner. The motion to suppress must be denied.

IT IS SO ORDERED.

9. Additional cases where the search was upheld and the premises were unoccupied at entry: *Kraft v. State,* Md.App., 19 Md.App. 108, 309 A.2d 643 (1973); *State v. Wilson,* Ohio App., 41 Ohio App.2d 240, 325 N.E.2d 249 (1974), *Diamond v. State,* Ala. Cr. App., 363 So.2d 109 (1978), *State v. Gutierez,* 91 N.M. 542, 577 P.2d 440 (1978), and *Commonwealth v. Harris,* 479 Pa. 343, 388 A.2d 688 (1978); *United States v. Gervato,* 3rd Cir., 474 F.2d 40 (1973).