**STATE of Delaware, Appellant,**

v.

**Sharon MARINE, Defendant
Below, Appellee.**

Supreme Court of Delaware.

Submitted: May 9, 1983.
Decided: July 12, 1983.

Gary A. Myers (argued), Deputy Atty.
Gen., Georgetown, for appellant.

James B. Tyler, III (argued), George-
town, for appellee.

Before HERRMANN, C.J., and MOORE and CHRISTIE, JJ.

CHRISTIE, Justice:

This is an appeal by the State, pursuant to 10 *Del.C.* § 9902(b),[1] from a decision of the Superior Court suppressing wiretap evidence which was to have been used against Sharon Marine. The issue on appeal is whether suppression of the contents of a wiretap is required where notice that the wiretap had taken place was not provided to the defendant within 90 days after the termination date in the wiretap order, as required by the Delaware wiretapping and electronic surveillance statute, 11 *Del.C.* § 1336.

On December 3, 1981, the Attorney General, acting through a deputy, applied for a wiretap order on the telephone in the residence of Harry T. Nichols. Probable cause for this application was provided in part by a dialed number recorder (known as a pen register) monitoring that telephone number. Sharon Marine was described in the wiretap application as a person suspected of involvement in narcotics related crimes and one whose communications would be intercepted. A Superior Court judge issued an appropriate order authorizing surveillance for a period of 20 days from December 4 to December 25, 1981. Although Marine had been listed in the State's application, the Court did not include her name in the list of subjects to be covered by the terms of the order.

As a result of the telephone surveillance, Marine was arrested on December 16, 1981. She was verbally informed of the existence of the wiretap at the time of her arrest. On March 18, 1982, Marine specifically requested discovery of any recorded conversations and requested copies of the wiretap application, order and return, and any inventory notices sent by the State. The State did not comply with her request until May 28, 1982, 154 days after the termination date in the wiretap order. On that date, the State asserts that it mailed the requisite post-intercept notice, the statutory wiretap inventory, to her last known address but that the notice had been returned undelivered.[2]

On July 7, 1982, Marine moved for suppression of the contents of the wiretap because the State had failed to send her the inventory notice within 90 days of the termination date of the order. On August 30, 1982, the Superior Court ruled in her favor, finding that although the question of prejudicial effect from the failure to send an inventory notice was a "close one", the contents of the wiretap would be suppressed. In a brief opinion, the Court held:

> However, this result may be viewed as technical, in the light of those factors, [a subsequent prompt discovery request after arrest] defendant moved efficiently and promptly toward preparation for trial and protection of her fundamental statutory and constitutional rights; and she is entitled to have at her disposal during that time all materials that the General Assembly has decreed must be available in this kind of proceeding that invades the privacy of the home.

The State has appealed, arguing that in the absence of a finding of prejudice from the failure to send a timely inventory notice, the contents of the wiretap should not have been suppressed. Marine answers

---

1. 10 *Del.C.* § 9902. *Appeal as of right.*

    \*    \*    \*    \*    \*    \*

    (b) When any order is entered before trial in any court suppressing or excluding substantial and material evidence, the court, upon certification by the Attorney General that the evidence is essential to the prosecution of the case, shall dismiss the complaint, indictment or information or any count thereof to the proof of which the evidence suppressed or excluded is essential. Upon ordering the complaint, in-dictment or information or any count thereof dismissed pursuant to the Attorney General's certification, the reasons of the dismissal shall be set forth in the order entered upon the record.

2. The parties have not raised the issue here and we make no finding in this case as to whether the inventory notice had to be personally received by Marine in order to satisfy the provisions of 11 *Del.C.* § 1336(n).

that the Superior Court decision was correct, and that a finding of prejudice was made by the Court. She argues that the failure to name her in the wiretap order, coupled with the failure to provide inventory notice, rendered the wiretap order unlawful as to her. She also makes two additional arguments in support of the Superior Court's decision: 1) the wiretap application was made by a party not authorized by § 1336(g) to make such application and, thus, the ensuing order was unlawful, and 2) the State's application was tainted because it failed to apprise the judge, in violation of § 1336(h)(5), of the State's almost simultaneous application to another judge in another county for an extension of the use of a dialed number recorder on the same telephone on which the tap was to be conducted.

Marine has put forward these arguments as if there were a cross appeal. However, a cross appeal is not permitted by statute. *See* 10 *Del.C.* § 9902; *State v. Cooley,* Del. Supr., 457 A.2d 352, 356 (1983). We will dismiss her attempt to file a cross appeal but will consider her arguments as additional contentions in support of the Superior Court holding.

We find that the wiretap was the result of a lawful court order and that suppression of the contents, as they pertain to Marine, was an error.

■ The Delaware electronic surveillance statute as found in 11 *Del.C.* § 1336 is a lengthy and complex statute, patterned upon the federal wiretap statute, found in 18 U.S.C. §§ 2510–2520. Under these statutes, electronic surveillance may be authorized only upon compliance with specifically designated procedures. These procedural restrictions were created to protect the Fourth Amendment rights of all persons. Evidence obtained without authority may be suppressed for violation of statutory restrictions as well as for violation of constitutional rights. *United States v. Giordano,*

416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974).

Suppression of the contents of a wiretap is required by 11 *Del.C.* § 1336(t)[3] when:

(1) The communication was unlawfully intercepted;

(2) The order of authorization is insufficient on its face;

(3) The interception was not made in conformity with the order of authorization. . . .

In this case, there are no allegations that the order was insufficient on its face or that the conduct of the wiretap was not in conformity with that order. The decision to suppress was premised on a determination that the failure to provide post-intercept inventory notice within the 90 day period designated by the statute rendered the use of the properly intercepted conversations unlawful.

The requirements as to post-intercept inventory notice are found in 11 *Del.C.* § 1336(n). The statute requires:

\* \* \* \* \* \*

(n) Within a reasonable time but not later than 90 days after the termination of the period of the order or of extensions or renewals thereof, or the date of the denial of an order applied for under subsection (1) of this section; the issuing or denying Judge shall cause to be served on the person named in the order or application, and such other parties to the intercepted communications as the Judge may in his discretion determine to be in the interest of justice, an inventory which shall include:

(1) Notice of the entry of the order or the application for an order denied under subsection (1) of this section;

(2) The date of the entry of the order or the denial of an order applied for under subsection (1) of this section;

(3) The period of authorized or disapproved interception; and

3. The comparable federal statutory section is found in 18 U.S.C. § 2518(10)(a).

(4) The fact that during the period wire or oral communications were or were not intercepted.

The Court, upon the filing of a motion, may in its discretion make available to such person or his attorney for inspection such portions of the intercepted communications, applications and orders as the Court determines to be in the interest of justice. On an ex parte showing of good cause to the Court the serving of the inventory required by this subsection may be postponed.

Section 1336(n) describes two classes of persons as recipients of this statutory notice: the first class is often called the mandatory notice class but is more aptly described as the automatic notice class since, if the parties are named, they receive notice, whether or not they are actually overheard; the second class is the discretionary notice class in which all members do not necessarily receive notice even if their conversations have been overheard. As to the second class, the Court must decide whether notice is warranted under the facts of a particular situation. On an *ex parte* showing of good cause, the Court may postpone the notice. No application for a postponement was filed here. Therefore, within 90 days of the termination date of the order for this wiretap (by March 23, 1982), the Court should have sent to the named subject and, in the Court's discretion, to other persons overheard, notice of four facts: entry of or application for an order, date of entry of or denial of an order, the period of the tap, and the fact that communications were or were not overheard. The notice does not divulge the contents of the wiretap. However, after receiving the notice, a party may request the Court to make portions of the intercepted conversations and the original applications and orders available for review.

The post-interception notice has been pictured as being intended to:

The provision alone should insure the community that the techniques are reasonably employed. Through its operation all authorized interpretations must eventually become known at least to the subject. He can then seek appropriate civil redress ... if he feels that his privacy has been unlawfully invaded.

S.Rep. 1097, 90th Cong., 2d Sess., 1968 U.S. Code Cong. & Ad.News 2112, 2194.

Marine argues that since she was a known subject, described by the State in its application for the order, she should have been named in the order and that she would then have automatically received the post-intercept notice. She contends that the failure to name her and the resulting absence of notice rendered the wiretap unlawful as to her. She alleges that her actual post-intercept knowledge of the existence of the wiretap is not an acceptable substitute for official notice. However, she does not specifically delineate any prejudice she has suffered.

We think that whatever the explanation may be for the absence of her name from the original Court order and the later failure to give Marine notice within the statutory time limits, such omissions, in this case, do not render a previously lawfully authorized and executed interception unlawful.

■ Even though Marine was named in the State's application, it does not follow that she had to be named as a target in the order. In *United States v. Kahn,* 415 U.S. 143, 152–56, 94 S.Ct. 977, 982–84, 39 L.Ed.2d 225 (1974), the Court found that the fact that a wife was known to use the target telephone did not mandate that she had to be named in the order. Rather, the Court held that there had to be a judicial finding of probable cause to believe that the named person was committing the offense before that person became a subject of the order. *See* 11 *Del.C.* § 1336(i); 18 U.S.C. 2518(3). Thus, the absence of the name of a described and known person from an order is not *per se* volative.

Further, in *State v. Shy,* Del.Supr., 373 A.2d 215 (1977), we reversed a Superior Court decision to suppress the contents of a wiretap because the wiretap application

failed to specifically name the known suspect of a crime whose communications were to be intercepted. We found that in the absence of prejudice to the defendant or intentional deception on the part of the State, a failure to name a known subject in the order was only a technical violation of a precondition to judicial authorization and, under the circumstances, such failure did not require suppression of the evidence obtained. In *State v. Shy,* as in the case now before the Court, defendant had a later opportunity to listen to the actual tapes and had gained more than the information which would have been included in an official and timely post-intercept notice. Thus, the mere absence of Marine's name from the order did not make the subsequent wiretap unlawful.

The relationship of the inventory notice to the preceeding wiretap was at issue in the case of *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). The United States Supreme Court addressed the issue of whether the post-intercept wiretap provisions were central to the purpose of the wiretap statute and whether a violation of these provisions inevitably leads to suppression of the evidence. Although violations of central provisions require suppression, the Court found that the inventory provisions were not central to the statutory scheme and that in the absence of a showing of prejudice to the defendant or evidence of deceptive intent by the government, an inventory notice violation did not render a wiretap unlawful and suppression was not required.

■ The rules of these cases control the issue before us and resolve the questions posed by the undisputed facts of record: Marine was described to the Court; Marine received actual, oral notice from the police of the existence of the wiretap on December 16, 1981; she was aware of the existence of wiretap evidence prior to March, 1982; and she, herself, was able to review transcripts of conversations before July 7, 1982, well in advance of her trial date. It is clear that she was in actual receipt of more information than would have been provided by the statutory inventory notice, which is limited, roughly, to information regarding the fact of the lawful existence of a wiretap and the dates it was conducted. She could not have suffered prejudice from a failure to provide her with timely, official post-intercept notice, since those provisions were designed to inform her of facts of which she already knew. *See also United States v. Fury,* 2d Cir., 554 F.2d 522, 528–29 (1977), *cert. denied* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977), 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). Under these circumstances, the contents of the wiretap should not have been suppressed by the Superior Court.

We next turn to arguments raised by Marine which we will consider as additional arguments in support of the Superior Court's suppression decision. First, she argues that 11 *Del.C.* § 1336(g) requires that the Attorney General personally apply, or at least sign a wiretap application, and that since he did not do so in this case, the interception was unlawful.

The pertinent statutory section provides as follows:

(g) The Attorney General may make application to a Judge designated to receive the same for an order authorizing or approving the interception of a wire or oral communication by the investigative or law-enforcement officers or agency having responsibility for an investigation when such interception may provide evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, dealing in narcotic drugs, dangerous drugs, central nervous system depressant or stimulant drugs, controlled substances or counterfeit controlled substances or any felony or any conspiracy to commit any of the foregoing offenses or which may provide evidence aiding in the apprehension of the perpetrator of any of the foregoing offenses.

Section 1336(g) differs from the federal statutory provision applicable to the United

States Attorney, 18 U.S.C. § 2516(1).[4] That section expressly permits delegation of the wiretap authorization to "any Assistant Attorney General specifically designated by the Attorney General". *See generally United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). The language used by the Delaware statute (§ 1336(g)) is patterned on 18 U.S. § 2516(2),[5] which has been characterized as providing "a wider dispersal of authority among state officers to approve wiretap applications and leaves the matter of delegation up to state law". *United States v. Giordano,* 416 U.S. at 522, 94 S.Ct. at 1830; *see id.* at n. 11; *but see State v. Daniels,* Fla.Supr., 389 So.2d 631 (1980), in which the Florida Supreme Court held that 18 U.S.C. § 2516(2) is preemptive and precludes delegation of authorization below the level of the State chief prosecuting officer.

■ The authorities indicate, and the parties agree, that the function of 18 U.S.C. § 2516(1) and (2), as well as of 11 *Del.C.* § 1336(g) is to centralize policy making responsibility for the use of electronic surveillance in the chief prosecuting officer of the state or county, a person who is responsive to the political process. *See United States v. Giordano.* Centralization of authority is deemed to prevent abuse of surveillance by focusing decision making responsibility.

Thus, § 1336(g) contains a provision closely related to a basic purpose of the entire statute, preventing unwarranted intrusions into the private communications of citizens. It follows that the provisions of § 1336(g) must be complied with strictly insofar as it is required that the authority to act come from the Attorney General. Evidence uncovered without proper authorization must be suppressed. *See United States v. Giordano,* 416 U.S. at 524, 94 S.Ct. at 1831; *but see United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

Although the purpose of 11 *Del.C.* § 1336(g) is identical to that of 18 U.S.C. § 2516(1) and (2), its language varies slightly. Section 2516(1) speaks of the Attorney General "authorizing an application to a Federal judge"; § 2516(2) states that "[t]he principal prosecuting attorney of any state . . . may apply to [a state court] judge"; § 1336(g) says "[t]he Attorney General may make application". Marine argues that this variant phrasing must be construed to mean that the Delaware statute requires that an application must be signed by the Attorney General, not by his deputy, the official who signed the application in this case.

However, if we accept this narrow interpretation, we would be going beyond the purpose of the provision, the centralization of authorization authority in the Attorney

---

4. 18 U.S.C. § 2516 (in pertinent part) Authorization for interception of wire or oral communications.

  (1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter or order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of—

5. 18 U.S.C. § 2516(2) (in pertinent part):

  (2) The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to

make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnaping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.

General, and defeating the obvious intent of the legislation to permit authorized electronic surveillance under reasonably controlled circumstances. *See Wilson v. State,* Del.Supr., 343 A.2d 613, 615 (1975).

■ The record reveals that the essential authorization steps were completed in this case. There was actual, personal authorization by the Attorney General for the wiretap. The Attorney General was out of State at the time of authorization but he discussed the matter in a long distance telephone conversation with his deputy. He ordered the deputy to submit a wiretap application to the Superior Court. That application included an affidavit attesting to the particular manner in which the Attorney General had authorized the action. The omission of the Attorney General's signature from the application form did not run counter to the purpose of § 1336(g) since the Attorney General had rendered a personal decision on the telephone. *See also United States v. Johnson,* D.C.Cir., 696 F.2d 115, 123 (1982).

We find that the phrase "[the] Attorney General may make application" should be read so as to permit an application which is personally authorized by the Attorney General even though it is not signed by him or presented in person to the Court. The wiretap in this case was authorized in this manner, and suppression cannot be justified on account of any lack of participation by the Attorney General.

■ Marine's final argument in support of the decision of Superior Court is a contention that the State violated 11 *Del.C.* § 1336(h)(5) by failing to disclose to the Superior Court judge who ordered the wiretap, that a simultaneous application was being made to another judge for an extension of the use of a pen register on the same telephone. Thus, she argues that the evidence obtained as a result of the incomplete application must be suppressed.

The pertinent statutory section states:

(h) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation and shall state:

\* \* \* \* \* \*

(5) A statement of all previous applications, known to the individual authorizing and to the individual making the application, made to any court for authorization to intercept a wire or oral communication involving any of the same facilities or places specified in the application or involving any person whose communication is to be intercepted, and the action taken by the Court on each such application;

. . .

We think this issue is resolved by the holding in the case of *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The Court in that case ruled that installation and use of a pen register did not constitute a search within the meaning of the Fourth Amendment. It held that a warrant was not required because such a device did not intercept communications. *See also State v. Miller,* Del.Super., 449 A.2d 1065, 1067 (1982).

Thus, since an application for an extension of the use of a pen register under 11 *Del.C.* § 1336(x)(1) [6] did not constitute an application for interception of wire or oral communications, such an application did not come within the reporting provisions of § 1336(h)(5), and the absence of such information in the wiretap application did not invalidate the wiretap order.

We hold that Marine's arguments raised on what was designated as a cross appeal

---

**6.** 11 *Del.C.* § 1336 (in pertinent part):

(x)(1) The Superior Court shall have the power to issue orders authorizing the installation and use of a pen register device or touchtone decoder. Such order shall be issued when the Court is satisfied that an investigative or law-enforcement agency requesting the order is engaged in an investigation of possible criminal activity within the jurisdiction of the agency and that the requested pen register or touchtone decoder is reasonably calculated to further the investigation.

are without merit for the reasons previously stated.

The decision of the Superior Court to suppress the contents of the wiretap as to Sharon Marine is REVERSED.