741 S.E.2d 577

**STATE of South Carolina, Plaintiff,**

v.

**Francisco GUERRERO–FLORES, Defendant.**

Appellate Case No.2012–212046.

No. 2013–03–06–01.

Court of Appeals of South Carolina.

March 6, 2013.

532

## ORDER

Francisco Guerrero–Flores has been indicted on drug charges and is awaiting trial. He filed a motion to suppress the contents of phone calls intercepted pursuant to section 17–30–110 of the South Carolina Code (Supp.2012), a part of the South Carolina Homeland Security Act. *See* S.C.Code Ann. §§ 17–30–10 to –145 (Supp.2012). Sections 17–30–110 and 17–30–15 require that this court hear the motion to suppress. *See* § 17–30–110(A) (requiring motions to suppress the contents of intercepted wire or oral communications be made to the "reviewing authority"); § 17–30–15(9) (defining "[r]eviewing authority" as "a panel of three judges of the South Carolina Court of Appeals"). Guerrero–Flores raises two arguments in support of suppression.[1] First, he contends the orders authorizing the interceptions violated subsection 17–30–80(D) because they authorized interception outside of the state of South Carolina. Second, he asserts the intercepted communications should be suppressed because neither the South Carolina Law Enforcement Division (SLED) nor an individual operating under a contract with SLED intercepted the communications as required under section 17–30–70. We deny the motion to suppress.

## I. Facts

In September 2009, SLED, the Lexington County Sheriff's Department, and the United States Drug Enforcement Ad-

---

1. Guerrero–Flores raised additional arguments in his motion to suppress, which he conceded or withdrew at the suppression hearing. First, he argued the State failed to provide any evidence that it complied with the statutory requirements of the Homeland Security Act as to "Target Phone # 3 and Target Phone # 4." Guerrero–Flores conceded this issue at the suppression hearing. Additionally, Guerrero–Flores conceded his argument that a progress report for "Target Phone # 5" was not in date compliance. Finally, Guerrero–Flores argued the order of authorization is insufficient on its face because it was issued based on information obtained through a "hand off" involving a criminal investigation in Tennessee. Guerrero–Flores withdrew this argument at the suppression hearing.

ministration (DEA) began investigating a large heroin traf-
ficking organization operating in Columbia and other parts of
South Carolina. The organization used multiple cellular
phones in the following manner: a purchaser would call one
number to place an order, and the "dispatcher" would use a
different phone to direct his "couriers" to the purchase loca-
tion. Between March 5 and June 17, 2010, the Attorney
General filed four applications in circuit court seeking authori-
zation to intercept these communications. Each of the appli-
cations was based on an affidavit submitted by SLED agent
Jack Rushing. The Honorable G. Thomas Cooper Jr. granted
each application in a written order.

Based in part on communications intercepted pursuant to
the orders, the State Grand Jury indicted Guerrero–Flores
and several co-defendants for conspiracy, possession with in-
tent to distribute, two counts of distribution, and several
counts of trafficking, all related to heroin. This court held a
hearing on Guerrero–Flores's motion in which we took testi-
mony, received documentary evidence, and heard argument.

## II.  Interpretation of the Homeland Security Act

■  The Homeland Security Act is patterned after Title III
of the Omnibus Crime Control and Safe Streets Act of 1968,
18 U.S.C. §§ 2510–22 (2002) (Federal Act). *State v. Whitner*,
399 S.C. 547, 552, 732 S.E.2d 861, 863 (2012). Because no
South Carolina cases have addressed the issues Guerrero–
Flores raises in his motion to suppress, we find that federal
cases analyzing comparable provisions of the Federal Act are
persuasive in interpreting the provisions of the Homeland
Security Act applicable to this case. *See Whitner*, 399 S.C. at
553, 732 S.E.2d at 864 (explaining "we look to the federal
courts' interpretations" of the Federal Act when interpreting
comparable provisions of the Homeland Security Act).

## III.  Compliance with Subsection 17–30–80(D)

■  Subsection 17–30–80(D) provides that "the judge may
enter an ex parte order ... authorizing or approving intercep-
tion of wire, oral, or electronic communications within the
territorial jurisdiction of the court in which the judge is
sitting...." Guerrero–Flores contends Judge Cooper's orders

do not comply with subsection 17–30–80(D) because they authorize interception of communications outside of the state of South Carolina. We find that each of the orders complies with the subsection because each authorizes interception of phone calls within South Carolina.

■■■ The interception of a phone call can occur in two locations—the place where the tapped phone is located and the place where law enforcement officers first overhear the phone call. *See United States v. Luong,* 471 F.3d 1107, 1109 (9th Cir.2006) (stating "interception occurs where the tapped phone is located *and* where law enforcement officers first overhear the call"); *United States v. Rodriguez,* 968 F.2d 130, 136 (2d Cir.1992) (providing interception occurs at the place where "the to-be-tapped telephone is located" and "at the place where the redirected contents are first heard"). Thus, pursuant to subsection 17–30–80(D), a judge has the power to order interception within South Carolina on the basis of either the phone being located in South Carolina or law enforcement officers listening to the call in South Carolina. In this case, we find the orders comply with subsection 17–30–80(D) for both reasons: (1) they are directed at phones located in South Carolina, and (2) they direct law enforcement officers to listen to the intercepted communications in real time in South Carolina.

■■■ First, the orders are directed at phones located in South Carolina. Although these are cellular phones, the applications and supporting affidavits set forth extensive facts demonstrating that the phone users were located in South Carolina. Notably, all but two of the phones had South Carolina area codes.[2] Further, the applications and support-

---

2. Two of the phones had 773 area codes and subscriber addresses in Irvine, California. The following facts, however, indicate these two phones were being used in South Carolina for the purpose of heroin trafficking. The State presented evidence that, according to Sprint Nextel, the California address is the default address Sprint uses if the subscriber does not provide one when activating the service. Additionally, the State provided the circuit court information from the Department of Motor Vehicles for one of the phone users, which indicated the user had a current South Carolina address. As to the other phone, the State provided the circuit court information showing that both phones were being used by the same person. Finally, the application indicated

ing affidavits provide details to support the fact that the phones were being used in South Carolina as an integral part of heroin trafficking occurring here. Therefore, the orders complied with subsection 17–30–80(D) because they authorized interception of phone calls made to and from phones located in South Carolina.

Second, the orders directed SLED to listen to the intercepted calls in South Carolina.[3] Each order contains the following language: "interception shall be conducted at the secure regional facility maintained by the DEA in Atlanta, Georgia, then routed to a secure listening post at the DEA office in Columbia, South Carolina (which is networked to the Atlanta, Georgia facility)." Thus, by requiring SLED agents to listen to the communications at "a secure listening post . . . in Columbia, South Carolina," the orders authorized the interception of the communications in South Carolina. *See Luong*, 471 F.3d at 1109 (providing "interception occurs . . . where law enforcement officers first overhear the call"). Accordingly, the orders comply with subsection 17–30–80(D).

■ Guerrero–Flores contends, however, the requirement that SLED use a DEA facility outside South Carolina violates subsection 17–30–80(D). We disagree. Guerrero–Flores focuses on the following language in each order: "interception shall be conducted at the secure regional facility maintained by the DEA in Atlanta, Georgia. . . ." While Guerrero–Flores is correct that this provision allows interception outside "the territorial jurisdiction of the court," he is not correct that this provision violates subsection 17–30–80(D). His argument ignores the remainder of the quoted sentence: ". . . then routed to a secure listening post at the DEA office in Columbia, South Carolina (which is networked to the Atlanta, Georgia facility)." As explained above, we hold this language complies with subsection 17–30–80(D) because it "authoriz[es] . . . inter-

---

law enforcement officers physically located one of the phones at a residence in Lexington County using a global positioning system.

**3.** We find it necessary to the resolution of this motion that we address this second reason the orders complied with subsection 17–30–80(D) because the evidence indicates that some of the phone calls were intercepted at a time when the cellular phones were not physically located in South Carolina.

ception ... within the territorial jurisdiction of the court." The mere fact that the order also authorizes interception in another state does not violate subsection 17–30–80(D). In fact, the State presented testimony of DEA telecommunication specialist Herman Jenkins indicating it is not practically possible for a law enforcement agency to intercept phone calls in South Carolina without using the DEA's regional intercept system facility in Atlanta. Jenkins explained that the DEA's Atlanta facility supports Georgia, South Carolina, North Carolina, and Tennessee. Therefore, all phone calls intercepted by law enforcement in those states are necessarily intercepted in Atlanta, in addition to the forum state.

■ Guerrero–Flores also argues that a two to three second delay in routing the calls to South Carolina requires a finding that the orders violated subsection 17–30–80(D). He argues that as a result of this brief delay, the calls were not intercepted in South Carolina because officers did not "first overhear" the calls here. See *Luong*, 471 F.3d at 1109 (providing "interception occurs ... where law enforcement officers first overhear the call"). We disagree. Jenkins testified this delay in routing the calls from Atlanta to Columbia was a necessary consequence of the distance between the two cities, and that the technological limitations made the delay unavoidable. He also testified, although there was a slight delay, the calls were being broadcast to the Atlanta and Columbia offices in such a way that officers in both locations were listening to the communications in real time. In explaining how communications were received by both offices, Jenkins stated, "Whatever happen[ed] in Atlanta, w[ould] happen in Columbia ... in real time."

Guerrero–Flores argues the use of the word "then" in the circuit court's orders, coupled with the necessary two to three second delay in routing the calls to South Carolina, indicates that the orders authorized calls to be intercepted only in Georgia because they were first heard there. His argument is based on a misreading of *Rodriguez* and *Luong*, and in particular the Second and Ninth Circuits' use of the phrases "first heard" and "first overhear."

In *Rodriguez*, the order authorizing the interception of phone calls was entered in the Southern District of New York,

but four of the five phones to be tapped were located in New Jersey. 968 F.2d at 134. Because these phones were not located within the jurisdiction of the court that entered the order, the court did not have authority to enter the order based solely on the location of the phones. *Id.* at 134–35. Analyzing whether the order was nevertheless valid, the Second Circuit focused on the statutory definition of "interception." *Id.* at 135–36. The Federal Act defines the term precisely as the Homeland Security Act defines "Intercept." *Compare* 18 U.S.C. § 2510(4) *with* S.C.Code Ann. § 17–30–15(3) (both defining "intercept" as "the aural or other acquisition of the contents of any wire ... or oral communication"). The court reasoned that because "the definition of interception includes the 'aural' acquisition of the contents of the communication, the interception must also be considered to occur at the place where the redirected contents are first heard." 968 F.2d at 136.

*Rodriguez* is based on the location of "aural acquisition of the contents" of the calls, not on the specific timing of that event in one jurisdiction compared to its timing in another jurisdiction where interception might also have occurred. In *Rodriguez*, there was no need to address the significance of a delay between one listening location and another because the only place the calls were "first heard" was New York. *See* 968 F.2d at 135 (stating "[t]he order was entered on the government's representation ... that *all* of the interception equipment for these five telephones would be ... in the Southern District of New York" (emphasis added)).[4] The *Rodriguez* court used the term "first heard" to distinguish the situation

---

4. Other courts have used phrases similar, if not identical, to "first heard." *See, e.g., Luong,* 471 F.3d at 1109 (using the phrase "first overhear the call"); *United States v. Denman,* 100 F.3d 399, 403 (5th Cir.1996) (using the phrase "original listening post"); *United States v. Tavarez,* 40 F.3d 1136, 1138 (10th Cir.1994) (quoting *Rodriguez* for the phrase "first to be heard"). In each of those cases, however, there was only one listening place. *See Luong,* 471 F.3d at 1109 (stating "all of the intercepted conversations would 'first be heard in the Northern District of California[,]' " the forum); *Denman,* 100 F.3d at 401 (stating "the FBI intercepted, monitored, and recorded the calls ... in Nacogdoches, Texas," within the forum); *Tavarez,* 40 F.3d at 1138 (stating the calls were listened to in Cleveland County, Oklahoma, the forum). None of those cases involved the simultaneous routing of the call to a distant jurisdiction causing a delay in the call being heard in the forum.

in that case from one in which the calls were not listened to in real time in the forum state, but were initially listened to *only* in another state beyond the court's jurisdiction.

In *Luong*, the Ninth Circuit described the narrow issue before it as "whether this statute authorized the district court in the Northern District of California to authorize interception of communications to and from a mobile phone ... located outside of the court's territorial jurisdiction but the government's listening post was located within it." 471 F.3d at 1108. The defendants argued that interception could not occur "where the government sets up a listening post where it is first able to hear the intercepted conversation." *Id.* at 1109. Focusing as the Second Circuit did in *Rodriguez* on the statutory definition of "interception," and not on the timing of what happened in the forum as opposed to some other location, the Ninth Circuit upheld the interception, stating "interception occurs ... where law enforcement officers first overhear the call." *Id.* Importantly, there was only one listening post in *Luong*. *See id.* (stating the government's "affidavit indicated that ... all of the intercepted conversations would 'first be heard in the Northern District of California' "). Therefore, the phrase "first overhear" as used in *Luong* cannot be read to apply to the situation we face here—where officers listened to the conversations in real time in South Carolina, but there was a several second delay in routing the calls from the DEA post in Atlanta.

Thus, a several second delay between Atlanta and Columbia is immaterial because the reasoning of *Rodriguez* and *Luong* requires us to focus on the location of the "aural acquisition" of the call. In this case, because law enforcement officers listened in real time in both cities, "aural acquisition" occurred simultaneously in both places.[5] Therefore, under the reason-

---

5. One federal district court has been presented with a similar situation to this case. *See United States v. North*, No. 3:09–CR–92–TSL–FKB, 2011 WL 653864 (S.D.Miss. Feb. 14, 2011). In *North*, the order authorizing the interception of phone calls from North's cell phone was entered in the Southern District of Mississippi. *Id.* at *1. North's cell phone was located outside of Mississippi, "the monitoring post was located in Louisiana, [and] a simultaneous feed and aural acquisition station was located in the wire room of the DEA's Jackson, Mississippi office in the Southern District of Mississippi, so that aural acquisition was occurring in both jurisdictions simultaneously[.]" *Id.* at *3. The

ing of *Rodriguez* and *Luong,* the orders complied with subsection 17–30–80(D).

## IV. Compliance with Section 17–30–70

■ Subsections 17–30–70(A)(1) and (A)(3) provide that a "judge may grant ... an order authorizing or approving the interception of wire, oral, or electronic communications by: [SLED] ... or an individual operating under a contract with [SLED]" for the investigation of certain criminal offenses. Guerrero–Flores contends the orders were not carried out in compliance with section 17–30–70 because neither SLED nor an individual operating under a contract with SLED intercepted the communications. Because SLED listened to the phone calls in real time in South Carolina, we find that SLED intercepted them.[6] *See Luong,* 471 F.3d at 1109 (providing "interception occurs ... where law enforcement officers first overhear the call"). Accordingly, we find that SLED complied with subsection 17–30–70(A)(1) in carrying out the orders.

## V. Conclusion

Subsection 17–30–110(A) provides that "[i]f the reviewing authority does not unanimously determine that the order of authorization was issued and the communications were intercepted in conformity with the requirements of [the Homeland Security Act]," the contents of the calls and evidence derived from them were "obtained in violation of [the Act]." As we have explained, we unanimously find the orders were issued and the calls were intercepted in compliance with the Act. Accordingly, Guerrero–Flores's motion to suppress is denied.[7]

---

*North* court stated that the statute would have authorized interception in Mississippi based on the simultaneous feed; however, "while agents in the Jackson office apparently had the *capability* to hear conversations at the same time as the agents manning the Louisiana monitoring post, this did not occur." *Id.* at *4.

6. Because we find that SLED intercepted the phone calls in compliance with subsection 17–30–70(A)(1), we need not address Guerrero–Flores's issue of whether the orders were carried out in compliance with subsection 17–30–70(A)(3).

7. As to any issue raised concerning a violation of section 17–30–145, this court need not address it because Guerrero–Flores presented no

/s/John Cannon Few, C.J.

/s/H. Bruce Williams, J.

/s/Daniel F. Pieper, J.

evidence that SLED failed to provide the proper training for conducting the interception.