IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,　　　　　　:
　　　　　　　　　　　　　　　　　:　　I.D. No. 1412017874
　　v.　　　　　　　　　　　　　　:　　Kent County
　　　　　　　　　　　　　　　　　:
JERMAINE BRINKLEY,　　　　　　:
　　　　　　Defendant.　　　　　　:


Submitted: February 29, 2016
Decided: March 22, 2016

## ORDER

Upon Defendant's Motion for Reargument.
*Denied.*


Lindsay A. Taylor, Esquire of the Department of Justice, Dover, Delaware; attorney for the State of Delaware.

John S. Malik, Esquire, Wilmington, Delaware; attorney for the Defendant.


WITHAM, R.J.

Defendant Jermaine Brinkley ("Brinkley") requests this Court grant reargument on his motion to suppress wiretap evidence. Brinkley claims the Court did not consider all grounds asserted in the motion. Specifically, Brinkley requests the Court reconsider its decision based on his challenge to the territorial jurisdiction of the wiretap order and the denial of an evidentiary hearing.

## I.  FACTS AND PROCEDURAL HISTORY

In November 2015, this Court denied Brinkley's motion to suppress evidence derived from a wiretap order. Brinkley argued that the wiretap order authorized law enforcement officers to unlawfully intercept communications outside the territorial jurisdiction permitted under 11 *Del. C.* § 2407(c)(3). The State adequately responded to Brinkley's argument, but the Court deemed this argument waived because it was not raised prior to the motions deadline. In his motion for reargument, Brinkley contends that the State would not be prejudiced by the Court's reconsideration since the State devoted a significant portion of its brief to the geographic issue. Furthermore, the issue raises important questions about procedures to be followed by law enforcement when applying for a wiretap order, and by trial courts in granting them.

Brinkley requested an evidentiary hearing in his initial motion to suppress wiretap evidence, but failed to press the argument in his memorandum of law in support of the motion. However, Brinkley's reply memorandum of law in support of motion to suppress wiretap evidence ("Defendant's Reply Brief") argued that an evidentiary hearing was necessary because law enforcement misrepresented or

recklessly disregarded the truth with regard to eight specific issues. The Court denied Brinkley's request for an evidentiary hearing because he failed to meet the criteria required under *Franks v. Delaware*, and because the volume of information submitted in the affidavits that had not been specifically challenged or that had been dealt with in the discussions of stale information and the necessity requirements was sufficient for a finding of probable cause. Brinkley now moves this Court to grant reargument with respect to the geographic issue and the evidentiary hearing issue.

## II.  STANDARD OF REVIEW

Where the Superior Court Rules of Criminal Procedure provide no rule governing a particular practice, that practice is governed by the Superior Court Rules of Civil Procedure.[1] Thus, a motion for reargument in a criminal case is governed by Super Court Rule of Civil Procedure 59(e). A motion for reargument pursuant to Rule 59(e) will be granted only if "the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[2] A motion for reargument is not an opportunity for a party to rehash arguments already decided by the Court or to present new arguments not previously raised.[3] In order

---

[1] Super Ct. Crim. R. 57(d) ( "In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court.").

[2] *Kennedy v. Invacare, Inc.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).

[3] *Id.*; *Hennegan v. Cardiology Consultants, P.A.*, 2008 WL 4152678, at *1 (Del. Super. Sept. 9, 2009) (citing *Denison v. Redefer*, 2006 WL 1679580, at *2 (Del. Super. Mar. 31, 2006)).

for the motion to be granted, the movant must "demonstrate newly discovered evidence, a change in the law, or manifest injustice."[4]

## III.  DISCUSSION

A.  *11* Del. C. *§ 2407(c)(3) Allows for the Authorization of a Wiretap When the Communication is Either Intercepted in the State or is Sent or*
*Received in the State.*

Brinkley contends that the geographic location issue should be considered because it raises important questions about the procedures to be followed by law enforcement when applying for a wiretap order and by the trial courts in granting such orders.  He further contends that the issue has been fully briefed by the State and by defense counsel and is therefore ripe for decision.  The Court agrees, and will therefore reconsider the geographic issue.

The question raised by Brinkley's challenge asks whether 11 *Del. C.* § 2407(c)(3) grants jurisdiction to intercept cellular communications when an entire conversation that has been conducted on a cellular device both originates and is received outside of the court's jurisdiction.  Chapter 24 of title 11 is titled Wiretapping, Electronic Surveillance and Interception of Communications. Subchapter I of Chapter 24 is titled Electronic Surveillance and Interception of Communications.  Section 2407, which is found in Subchapter I, is titled Ex parte order authorizing interception.  As illustrated by these titles, the thrust of Chapter

---

[4] *Brenner v. Village Green, Inc.*, 2000 WL 972649, at *1 (Del. Super. May 23, 2000) (citing *E.I. duPont de Nemours Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. 1995)).

24, Subchapter I, and Section 2407 is the *interception* of electronic communications. Thus, the proper question is whether Section 2407 allows for the *interception* of a cellular communication when that communication is intercepted in the State, but has neither been sent nor received by a portable communication device that is located in the State. This question is one of first impression in Delaware. To answer this question, the Court will read the statute with the objective of giving effect to the intent of the legislature.

The United States Congress' enactment of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 set minimum standards for the interception of oral, wire, and electronic communications during criminal investigations.[5] States were subsequently required to enact legislation that was at least as protective of citizen's rights as Title III.[6] The federal wiretap statute is found at 18 U.S.C. §§ 2510-2520. Delaware's responsive statute was patterned on the federal statute and originally codified at 11 *Del. C.* § 1336.[7] Section 1336 was repealed in 1999 and replaced by 11 *Del. C.* §§ 2401-2434.[8] The 1999 changes were necessary "to become current with the emerging technology,"[9] and were "based upon federal and other states' wiretap and interception laws."[10] In 1990, the court in *State v. Perry*

---

[5] *Mustafa v. State*, 591 A.2d 481, 483 (Md. 1991).

[6] *State v. Seigel*, 292 A.2d 86, 94 (Md. 1972); *See also,* 18 U.S.C. § 2516(2).

[7] *State v. Marine*, 464 A.2d 872, 874 (Del. 1983).

[8] 72 Del. Laws ch. 232, § 1 (1999).

[9] Del. S.B. 208 syn., 140th Gen. Assem. (1999).

[10] *Id.*

noted that the federal wiretap statute and Delaware's wiretap statute were "in all material respects virtually identical."[11]  Despite amendments to both the federal statute and the Delaware statute, this remains true today.  Noting the absence of Delaware case law, the *Perry* court used federal case law to interpret similar language in the Delaware statute.  This Court is also faced with an absence of case law relating to the issue of territorial jurisdiction under Section 2407, and will therefore rely in part on federal case law.

---

[11] *State v. Perry*, 599 A.2d 759, 761 (Del. Super. 1990) (citing *United States v. Swan*, 545 F. Supp. 799, 804 (D. Del. 1982)).

To determine the statutory limitations on the interception of cellular communications, it is necessary to understand the terms used in Section 2407 as defined by the statute. Section 2401 defines "intercept" to mean "the aural or other acquisition of the contents of any wire, oral or electronic communication through the use of any electronic, mechanical or other device."[12] An "aural transfer" is defined as "a transfer containing the human voice at any point between and including the point of origin and the point of reception."[13] An "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data or intelligence of any electromagnetic, photoelectronic or photooptical system."[14] The definitions of "intercept" and "aural transfer" are identical verbatim, and the definition of "electronic communication" is materially identical, to the definitions found in the federal statute.[15]

---

[12] 11 *Del. C.* § 2401(10).

[13] 11 *Del. C.* § 2401(2).

[14] 11 *Del. C.* § 2401(5).

[15] *Compare* 18 U.S.C. § 2510(4), (12), (18) *with* 11 *Del. C.* § 2401(2), (5), (10).

These definitions apply to all subsequent sections of Delaware's wiretap statute. The specific language governing the issuance of an ex parte order authorizing interception is contained in Section 2407(c)[16] and is analogous to the relevant Title III language found at 18 U.S.C. § 2518(3).[17] The only substantive differences between the federal statute and the Delaware statute concern jurisdictional boundaries. A federal judge may approve an interception "within the

---

[16] Section 2407(c)states:

(c) Issuance of order.--

(1) Upon the application a judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, oral or electronic communications within the territorial jurisdiction permitted under paragraph (c)(2) or (3) of this section, . . .

(2) Except as provided in paragraph (c)(3) of this section, an ex parte order issued under paragraph (c)(1) of this section may authorize the interception of wire, oral or electronic communications only within the territorial jurisdiction of the court in which the application was filed.

(3) If an application for an ex parte order is made by the Attorney General or other designee, an order issued under paragraph (c)(1) of this section may authorize the interception of communications sent or received by a mobile telephone anywhere within the State so as to permit the interception of the communications regardless of whether the mobile telephone is physically located within the jurisdiction of the court in which the application was filed at the time of the interception; however, the application must allege that the offense being investigated may transpire in the jurisdiction of the court in which the application is filed.

[17] 18 U.S.C. § 2518(3) states:

Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), . . .

8

territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)."[18]   The Delaware statute substitutes this language with subsections 2407(c)(2) and (3).   These subsections allow a judge to approve an interception within the territorial jurisdiction of the court, and in certain cases for interception anywhere within the State so long as the offense being investigated transpired within the court's jurisdiction.[19]   Thus, with allowances for the jurisdictional range of a federal court versus the jurisdictional range of a state court, the two statutes are materially identical.

> *The Delaware statute allows for the interception of electronic signals*
> *When those signals are intercepted within the State without regard to*
> *The location of the communication devices*

---

[18]  18 U.S.C. § 2518(3).

[19]  11 *Del. C.* § 2407(c).

Because the application for the wiretap order in the case *sub judice* was filed by the Attorney General's office, the specific subsection at issue is 11 *Del. C.* § 2407(c)(3). The language being challenged states that an order "may authorize the interception of communications sent or received by a mobile telephone anywhere within the State so as to permit the interception of the communications regardless of whether the mobile telephone is physically located within the jurisdiction of the court in which the application was filed at the time of the interception." Brinkley argued that this language was subject to only one interpretation. The words "anywhere in the State" must modify the immediately preceding words, "mobile telephone," and not the words "interception of communications. [20] Under Brinkley's interpretation, the statute would not allow for the interception of wireless communications unless the communication was sent or received by a mobile telephone that was located within the State. For reasons discussed below, this interpretation defies as well as transmogrifies legislative intent, is contrary to interpretations found in federal cases and in cases decided by our sister states with similar statutes, and is fraught with unintended consequences.

The language of the statute is subject to more than one reasonable interpretation. A reading of the phrase "anywhere within the State" as modifying "the interception of communications" is also a plausible translation. Under this reading, the statute would allow for the interception of wireless communications

---

[20] Defendant Jermaine Brinkley's Reply Memorandum of Law in Support of Motion to Suppress Wiretap Evidence, ID No. 1412017874, at 18 (Del. Super. Jun. 16, 2015) [hereinafter Defendant's Reply Brief].

when the communication was sent, received, or intercepted in the State. This interpretation places the emphasis on the point of interception rather than on where the highly mobile cellular device was located at the time of interception. Moreover, this interpretation is widely accepted and allows courts to give effect to the intent of the legislature.

In 1999, Delaware passed an act to amend the portion of the Delaware Code related to wiretapping, electronic surveillance, and interception of communications.[21] The act repealed the State's existing wiretap law, which at that time was codified at 11 *Del. C.* § 1336, and replaced it with Chapter 24 of title 11. Chapter 24 is a more comprehensive regulation and was passed with the specific intent of updating the existing wiretap statutes.[22] The legislature realized the need to become current with emerging technologies and made changes related to airwave transmissions, and electronic devices such as pagers and cellphones.[23] These changes were based upon similar changes to federal and other states' wiretap laws. Portions of the statute relating to electronic surveillance and interception of communications were codified in sections 2401 through 2412. Among the definitions added by the act were definitions for aural transfer, electronic communication, and electronic storage.[24] Verbiage relating to "intercepted wire or oral communications" was changed to read "intercepted wire, oral, or electronic

---

[21] Del. S.B. 208, 140th Gen. Assem., 72 Del. Laws ch. 232 (1999).

[22] Del. S.B. 208 syn., 140th Gen. Assem. (1999).

[23] *Id.*

[24] 11 *Del. C.* § 2401.

communication." In summary, the changes to the Delaware wiretap law were drafted to govern emerging technologies such as cellular communications. The changes illustrate a clear intent to evolve the statute in response to emerging technologies, and supports an interpretation that places the emphasis on the point of interception.

Adopting the interpretation urged by Brinkley would frustrate the intent of the legislature. Such a narrow reading would render the law ineffectual by requiring police officers operating under a valid wiretap warrant to cease interception efforts whenever parties subject to the intercept crossed state lines. Cellular telephones are now ubiquitous and by their nature are highly mobile. These attributes create unique challenges for law enforcement that were not present when the wiretap statutes were first passed decades ago. Law makers have attempted to compensate for the developmental speed and widespread use of these emerging technologies, and it is with this intent that the statute must be interpreted. Under Brinkley's proposed interpretation, foiling law enforcement efforts to gather evidence under a wiretap order would simply require suspects operating in Delaware to simply cross into Maryland, Pennsylvania, or New Jersey to communicate before returning to Delaware to perform a criminal act. Requiring law enforcement to obtain warrants from each state would place an undue burden upon agencies seeking to infiltrate organizations that may cross state lines on a regular basis. The logistical problems and costs involved in maintaining multiple

listening posts,[25] each operating under the supervision of a different judge, would render the wiretap statute impotent.

---

[25] A "listening post" is a physical location where law enforcement officers are located and first hear the intercepted communications. *See Davis v. State*, 43 A.3d 1044, 1046, 1047 (Md. 2012).

In addition, multiple wiretap orders would have an impact on the individual privacy rights that Title III and Chapter 24 seek to protect. It is worth noting that Title III and Chapter 24 generally prohibit wiretapping without the express consent of the courts. The interception of private communications is as much an invasion of a citizen's privacy as is the search of their house. Thus, a warrant must issue from a court before proceeding with the interception of communications just as a warrant must issue from a court before a home can be searched. The court's role is to ensure the warrant is necessary, that the warrant complies with constitutionally guaranteed rights, and that the scope of the warrant is limited to the greatest extent possible. Requiring wiretap orders in each jurisdiction where a cellular communication device might travel would diffuse oversight responsibilities. "[B]y diffusing oversight responsibilities, it might weaken the courts' ability to protect citizens' privacy by monitoring the wiretap process." [26] Minimization and durational requirements would be better tracked by a single court, thus avoiding unnecessary or unnecessarily long interceptions. Individual privacy rights are better preserved when a wiretap order for a cellular device is issued and monitored by one judge.

The legislative history of Delaware's wiretap statutes, as well as analogous federal and state cases discussed *infra*, demand a broader reading of the statute than that urged by Brinkley. Based on the foregoing, the proper interpretation of 11 *Del. C.* § 2407(c) would be that the interception of any electronic signal within the

---

[26] *United States v. Cano-Flores*, 796 F.3d 83, 87 (D.C. Cir. 2015).

14

State, without regard to where the signal originated or where it was received, is lawful under the statute. By definition, an interception is the aural acquisition of an electronic communication, and an aural transfer is "a transfer containing the human voice *at any point between* and including the point of origin and the point of reception." Thus, as long as the aural acquisition of the electronic communication occurs within the State, the interception is valid.

> *Federal case law supports the interception of signals within the State*
> *Regardless of where the signal originated or where it was received*

A definition allowing the interception of any electronic signal within the State, without regard to where the signal originated or where it was received, is supported by federal case law. Although made prior to the 1999 changes to the Delaware statute, the federal wiretap statutes also underwent changes to account for emerging technologies. In 1986, the statutes were amended to account for electronic communications.[27] Several federal courts, including all courts of appeals to have addressed the issue, have interpreted the amended federal statute as allowing interception when the interception occurs in the jurisdiction of the court issuing the wiretap order without regard for where the call originated or where it

---

[27] The Electronic Communications Privacy Act of 1986, 100 Stat. 1848 (1986). The Act amended, *inter alia*, most instances of oral and wire communication to read oral, wire, and electronic communication, and inserted the jurisdictional limitation found in Section 2518(3). The jurisdictional language, "(and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)," is similar to the jurisdictional language in Delaware's statute in that it allows for interception anywhere within the court's jurisdiction.

was eventually received.[28]

---

[28] *See Cano-Flores*, 796 F.3d at 86-87 (upholding a district court ruling that an interception of a conversation that originated and was received in Mexico, but was intercepted in Texas, was lawful); *United States v. Henley*, 766 F.3d 893, 911-12 (8th Cir. 2014) (agreeing with the Second and Fifth Circuits' holdings that "interception includes both the location of a tapped telephone and the original listening post, and that judges in either jurisdiction have authority under Title III to issue wiretap orders."); *United States v. Luong*, 471 F.3d 1107, 1109-10 (9th Cir. 2006) ("The most reasonable interpretation of the statutory definition of interception is that an interception occurs where the tapped phone is located and where law enforcement officers first overhear the call."); *United States v. Jackson*, 207 F.3d 910, 914-15 (7th Cir. 2000), vacated on other grounds, 531 U.S. 953 (2000) (upholding a wiretap order where a judge for the Northern District of Illinois authorized the interception of calls made and received in the Southern District of Illinois); *United States v. Denman*, 100 F.3d 399, 402-03 (5th Cir. 1996) ("We agree with the reasoning of the Second Circuit and now hold that interception includes both the location of a tapped telephone and the original listening post, and that judges in either jurisdiction have authority under Title III to issue wiretap orders."); *United States v. Tavarez*, 40 F.3d 1136, 1138 (10th Cir. 1994) ("[T]he location of an 'interception' . . . includes the place where the intercepted communication is heard.").

The seminal case involving wiretaps under Title III is *United States v. Rodriguez*.[29] In *Rodriguez*, a wiretap authorized by the United States District Court for the Southern District of New York allowed for the interception of calls involving a New Jersey phone.[30] Although Rodriguez pled guilty, his co-defendants were convicted of crimes related to the manufacture and distribution of crack cocaine based on evidence derived from the wiretap.[31] The co-defendants challenged the conviction by arguing that the Southern District of New York court did not have jurisdiction to authorize the wiretaps on New Jersey phone numbers and therefore any evidence derived from the wiretaps should have been suppressed.[32] The district court ruled that the interception was within its jurisdiction because "the telephone communications were actually heard and recorded at United States Drug Enforcement Administration ("DEA") headquarters in Manhattan, which is within the Southern District of New York."[33] Title III authorizes a judge to intercept "electronic communications within the territorial jurisdiction of the court in which the judge is sitting."[34] On appeal, the Second Circuit noted that because "the definition of interception includes the 'aural' acquisition of the contents of the communication, the interception must also be

---

[29] *United States v. Rodriguez*, 968 F.2d 130 (2d Cir. 1992).

[30] *Id.* at 134-35.

[31] *Id.* at 134.

[32] *Id.* at 135.

[33] *Id.*

[34] 18 U.S.C. § 2518(3).

considered to occur at the place where the redirected contents are first heard."[35] Because the place where the calls were first heard was a listening post in Manhattan, and thus within the jurisdiction of the Southern District of New York, the Second Circuit Court of Appeals determined that the defendant's motion to suppress the evidence obtained through the wiretaps was properly denied.[36]

---

[35] *Rodriguez*, 968 F.2d at 136.

[36] *Id.*

Perhaps more analogous to the case *sub judice* is the United States Court of Appeals, District of Columbia Circuit, case of *United States v. Cano-Flores*.[37] In *Cano-Flores*, the defendant appealed his conviction for conspiring to manufacture and distribute cocaine and marijuana for importation to the United States.[38] The evidence used in securing the defendant's conviction was gathered by the DEA through the use of wiretaps authorized by various federal judges in the United States District Court for Southern District of Texas. The defendant argued that the wiretap orders exceeded the jurisdiction of the district court because the orders targeted calls that originated and were received in Mexico. The district court found the interceptions lawful because "they had taken place not in Mexico, but in the DEA wire room located in Houston, Texas (a location within the Southern District of Texas) after they had been accessed by cellular towers located in the United States."[39] Noting the *Rodriguez* court finding "that besides occurring at the site of the telephone, an interception 'must also be considered to occur at the place where the redirected contents are first heard,'"[40] and further noting that every appellate court to rule on the issue has followed *Rodriguez*, the D.C. Court of

---

[37] *United States v. Cano-Flores*, 796 F.3d 83 (D.C. Cir. 2015).

[38] *Id.* at 86.

[39] *Id.* (internal quotations omitted). Although the communications could not be intercepted unless the cellular signals accessed cellular towers located within the United States, the case is significant because the interception was allowed despite the fact that the entire intercepted conversation originated and was received in a foreign country.

[40] *Id.* (quoting *Rodriguez*, 968 F.2d at 136).

19

Appeals upheld the district court ruling.[41]

---

[41] *Id.* at 95.

*Rodriguez* provided the seminal interpretation of jurisdictional limits under the federal wiretap statute as codified at 18 U.S.C. § 2518(3).  All seven courts of appeals that have considered these jurisdictional limits have adopted the *Rodriguez* interpretation.  Courts in *Cano-Flores* and *United States v. Cosme*[42] each found that the interception of phone calls that originated in Mexico and were received in Mexico were lawfully intercepted in the United States when the listening post was located within the jurisdiction of the judge issuing the wiretap order.  This vast body of federal case law rejects the narrow reading of the statute urged by Brinkley.

> *Courts in other states follow* Rodriguez *and allow the interception of Signals within the state regardless of where the signal originated or Where it was received*

---

[42] *United States v. Cosme*, 2011 WL 3740337, at *1 (S.D. Cal. Aug. 24, 2011) (refusing to suppress evidence derived from a wiretap where the communication was intercepted in San Diego even though the entire duration of the intercepted conversation took place between two cellular phones located in Mexico).

Numerous courts from our sister states have also adopted the *Rodriguez* interpretation. The Maryland wiretap statute uses jurisdictional language that is substantially identical to the language found in the Delaware statute.[43] In *Davis v. State*, the Court of Appeals of Maryland adopted the federal gloss when it determined the proper jurisdiction for an ex parte wiretap order.[44] In *Davis*, a defendant's phone call that originated in Virginia and was received in Virginia was intercepted in Montgomery County in Maryland.[45] The court noted the Maryland wiretap statute had been evolving to keep pace with emerging technologies, and that legislative history as well as developed federal case law provided a persuasive approach for interpreting the Maryland statute in a manner similar to that in *Rodriguez*.[46] In a well reasoned and lengthy opinion, the *Davis* court held that the interception of the Virginia phone call at a listening post in Montgomery County was lawful and the denial of the motion to suppress evidence derived from the interception was proper.[47] Other states have also allowed jurisdiction based

---

[43] Md. Code Ann., Cts. & Jud. Proc. § 10-408 (West 2016) states in pertinent part: [M]ay authorize the interception of communications received or sent by a communication device anywhere within the State so as to permit the interception of the communications regardless of whether the communication device is physically located within the jurisdiction of the court in which the application was filed at the time of the interception. The application must allege that the offense being investigated may transpire in the jurisdiction of the court in which the application is filed.

[44] *Davis v. State*, 43 A.3d 1044, 1046 (Md. 2012).

[45] *Id.* at 1047.

[46] *Id.* at 1051.

[47] *Id.* at 1055.

22

upon the point of interception. The Tenth Circuit interpreted the Oklahoma wiretap statute to allow a district attorney for Judicial District 21, where the listening post was located, to apply for a wiretap order for telephones in District 19.[48] The Supreme Court of New Jersey stated that "a wiretap order signed by a New Jersey judge can empower investigators located in New Jersey to monitor intercepted conversations here, even if both parties to the call are outside the State."[49] The Supreme Court of Georgia held that state law vested in the superior courts the authority to issue wiretap warrants when the tapped phones or listening post were located in the courts' jurisdiction.[50] The Court of Appeals of South Carolina found that "a judge has the power to order interception within South Carolina on the basis of either the phone being located in South Carolina or law enforcement officers listening to the call in South Carolina."[51]

Brinkley points to the Texas Criminal Court of Appeals case of *Castillo v. State* to support his contention that other states have adopted his interpretation of the wiretap statute.[52] Both the *Davis* case from Maryland and the *Ates* case from New Jersey cite *Castillo* as an example of a state not adopting an interpretation

---

[48] *Tavarez*, 40 F.3d at 1138.

[49] *State v. Ates*, 86 A.3d 710, 718 (N.J. 2014).

[50] *Luangkhot v. State*, 736 S.E.2d 397, 401 (Ga. 2013). The Supreme Court of Georgia held that a superior court did not have the authority to grant a wiretap order when the interception took place outside of the court's jurisdiction, but stated that "current state law vests the authority to issue wiretap warrants only in those superior courts of the judicial circuits in which the tapped phones or listening post are located." *Id.*

[51] *State v. Guerrero-Flores*, 741 S.E. 2d 577, 580 (S.C. Ct. App. 2013).

[52] Defendant's Reply Brief, *supra* note 20, at 22.

holding that "interception" occurs where the communication is captured or redirected and where the contents of the communication was originally heard.[53] However, *Castillo* was decided prior to the Second Circuit's decision in *Rodriguez*, and although it is true that in 1990 the *Castillo* court interpreted the existing wiretap statute to mean that "a communication is 'intercepted' where the wiretap device is physically placed,"[54] the statute was amended in 1997 so that a judge of competent jurisdiction may authorize a wiretap when the communication is intercepted in the judicial district.[55] Thus, the proposition in *Castillo* that a communication is intercepted where the wiretap device is physically placed as opposed to where the interception is monitored has been overturned by the Texas legislature.[56]

---

[53] *Davis*, 43 A.3d at 1053; *Ates*, 86 A.3d at 721.

[54] *Castillo v. State*, 810 S.W.2d 180, 183 (Tex. Crim. App. 1990).

[55] Wiretapping-Civil and Criminal Consequences, 1997 Tex. Sess. Law Serv. Ch. 1051 (S.B. 1120) (Vernon's).

[56] Tex. Crim. Proc. Code Ann. art. 18.20, § 3(b) reads in pertinent part:
(b) Except as provided by Subsection (c), a judge appointed under Subsection (a) may act on an application for authorization to intercept wire, oral, or electronic communications if the judge is appointed as the judge of competent jurisdiction within the administrative judicial district in which the following is located:
(1) the site of:
(A) the proposed interception; or
(B) the interception device to be installed or monitored;
(2) the communication device to be intercepted;
(3) the billing, residential, or business address of the subscriber to the electronic communications service to be intercepted;
(4) the headquarters of the law enforcement agency that makes a request for or executes an order authorizing an interception; or
(5) the headquarters of the service provider.

Brinkley also points to the California Penal Code in support of his interpretation. Although Brinkley correctly notes that the code states that "the judge may enter an ex parte order, as requested or modified, authorizing interception of wire or electronic communications initially intercepted within the territorial jurisdiction of the court in which the judge is sitting,"[57] this language has yet to be interpreted by the California courts. The words "initially intercepted" were added to the statute in 2000.[58] This indicates an attempt by the California legislature to update the existing code to contend with electronic communications just as the federal government made changes in 1986 and Delaware made changes in 1999. When the California courts do interpret this provision, they may well follow the vast majority of courts that have considered the issue before them and adopt the federal gloss.

In summary, the consideration of legislative intent, the consequences of different particular constructions of the statute, and abundant persuasive case law lead this Court to adopt the same federal gloss that has been adopted by so many other courts. The pertinent language in 11 *Del C.* § 2407(c)(3) should read so that "anywhere within the State" modifies "interception." This Court holds that a wiretap order is lawful when it authorizes the interception of signals within the State without regard to the location of the communication devices. Thus, the wiretap order issued in the instant case was lawful, and Brinkley's motion to

---

[57] Cal. Penal Code § 629.52 (West 2015).

[58] Crimes-Juveniles-Gang Violence, 2000 Cal. Legis. Serv. Prop. 21 (WEST).

26

suppress evidence based upon a reconsideration of this issue is **DENIED**.

> *B. Brinkley has Failed to Show Newly Discovered Evidence, a*
> *Change in the Law, or Manifest Injustice and Thus is Not*
> *Entitled to an Evidentiary Hearing.*

Brinkley also requests that this Court reevaluate its denial of his right to an evidentiary hearing. "[A] defendant in a criminal proceeding, subsequent to the ex parte issuance of a search warrant, has a constitutional right to an evidentiary hearing to challenge the veracity of supporting affidavits if the defendant makes a 'substantial preliminary showing' that (1) the affiant included a false statement in the affidavit knowingly and intentionally, or with reckless disregard for the truth, and (2) the false statement is necessary to the finding of probable cause."[59] Brinkley claims he had made the required "substantial preliminary showing" that the police knowingly and intentionally or with reckless disregard for the truth relied on false statements to establish probable cause.[60] However, even if Brinkley had made this showing, the right to an evidentiary hearing under *Franks v. Delaware*[61] requires more. Not only was Brinkley required to show that the challenged statements, if false, were made knowingly, intentionally, or with reckless disregard, but he was also required to show the challenged statements were necessary for a finding of probable cause. Brinkley failed to meet that burden.

---

[59] *Lampkins v. State*, 465 A.2d 785, 791 (Del. 1983) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

[60] Defendant's Motion for Reargument, ID No. 14120178, at 5 n.8 (Del. Super. Nov 25, 2015).

In his reply memorandum, Brinkley claimed law enforcement misrepresented or recklessly disregarded the truth with regard to eight specific issues. These issues were 1) the status of Brinkley's charges in cases number 1403019846 relating to drug and weapon charges; 2) the ability to use pole cameras; 3) the difficulty of conducting physical surveillance; 4) the length of the investigation; 5) the existence of a single organized entity; 6) the alleged compartmentalized and sophisticated nature of the organization; 7) the ability to attach a GPS device to Geoboris White's car; and 8) the reliability of the confidential informants.[62]

---

[61] *Franks v. Delaware*, 438 U.S. 154 (1978).

[62] Defendant's Reply Brief, *supra* note 20, at 5.

This Court's decision on the motion to suppress wiretap evidence discussed a number of these issues, and found demands for a *Franks* hearing to be unwarranted. Disposing of each argument in turn, Brinkley first stated that the November 19 Affidavit misrepresented the status of drug and weapons charges against him. The affiant claimed the charges were still pending, and failed to mention the charges were going to be dismissed until forty-five pages further into affidavit. Brinkley claims the failure to mention that the charges were going to be dismissed until later in the affidavit was an attempt to "preserve the illusion of continuous criminality."[63] Brinkley acknowledged that "the Attorney General's office had decided to dismiss all charges against Brinkley prior to filing the November 19 Affidavit," but does not state that the charges were dismissed before the affidavit was filed. Thus, the charges were still pending at the time, and the affiant's statement was factually accurate. This charge did not meet the required standard of including a false statement in the affidavit knowingly and intentionally, or with reckless disregard for the truth because there was no false statement.

---

[63] *Id.* at 7

Brinkley next argued that the State may have been able to use pole cameras, and that if Delaware law enforcement agents did not possess the technology to install a camera on a streetlight, then the DEA could have performed the installation.[64]  Brinkley cites one case in support of his conclusion that the DEA could install the pole camera.[65]  In determining the necessity for a wiretap, a court will review the application and accompanying affidavits.  "It is enough if the affidavit explains the prospective or retroactive failure of several investigative techniques that reasonably suggest themselves." [66]  The State's burden of establishing compliance with the necessity requirement in 11 *Del. C.* § 2407(a)(3) is not great.[67]  "The purpose of the 'necessity' requirement is not to foreclose electronic surveillance until 'every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'"[68]  If the utility pole was not capable of supporting or powering a pole camera, then neither the State nor the DEA could mount the camera.  Thus, the argument that the DEA could install the camera is conclusory.  Moreover, the affiants claimed the pole camera would

---

[64] *Id.* at 15.

[65] Brinkley relies on *United States v. Cordero* to support his proposition that a streetlight is suitable for use of a pole camera.   609 Fed. Appx. 73, 75 (3d Cir. 2015).

[66] *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978). *See also State v. Miller*, 449 A.2d 1065, 1068 (Del. Super. 1982).

[67] *State v. Perry*, 599 A.2d 759, 764 (Del. Super. 1990) (citing *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir. 1976)).

[68] *Id.* (quoting *United States v. Alfonso*, 552 F.2d 605, 611 (5th Cir.1977)).

be of little or no value. That the pole camera wasn't installed, or that a tracking device was not placed on a vehicle owned by Geoboris White, does not foreclose the finding of probable cause. That these options were not vigorously pursued, or that the State may have been mistaken in their conclusions, does not meet the *Franks* criteria of "a false statement in the affidavit knowingly and intentionally, or with reckless disregard for the truth."

The remaining arguments were discussed in the decision denying the motion to suppress. This Court found that the investigation had been ongoing for a long period of time, discussed the organization as a single organized entity, described the compartmentalization, and discussed the use of confidential informants. The arguments offered challenged most every section in the affidavit, but there is no showing of false statements that were made knowingly and intentionally, or with reckless disregard for the truth. The arguments are conclusory allegations that the affiants got the facts wrong. Brinkley has brought forth no evidence, cited a change in the law, nor shown a manifest injustice, and his motion for reargument as it relates to an evidentiary hearing is therefore **DENIED**.

## IV. CONCLUSION

Based on the foregoing, the Court finds there was no basis for a reargument of the need for an evidentiary hearing. The Court has reconsidered the argument that the wiretap order exceeded its jurisdictional bounds and finds that it did not. Following the Court's reconsideration of the jurisdictional issue, the motion to suppress the wiretap remains **DENIED**.

31

*State v. Jermaine Brinkley*
I.D. No. 1412017874
March 22, 2016


      IT IS SO ORDERED.


                          /s/ William L. Witham, Jr.

                          Resident Judge


WLW/dmh
oc:    Prothonotary
xc:    Lindsay A. Taylor, Esquire
       John S. Malik, Esquire