**THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 2105007121 |
| | ) | |
| LOUIS KENT | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 21, 2022
Decided: November 15, 2022

**MEMORANDUM ORDER**

On this 15th day of November 2022, upon consideration of Defendant, Louis Kent's ("Defendant") Motion for Re-argument ("Motion"),[1] the State's Response,[2] and the record in this case, **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED** for the following reasons:

1. This matter arises out of a traffic stop and subsequent arrest of Defendant that occurred on May 14, 2021.[3] On May 31, 2022, Defendant filed a motion to suppress evidence,[4] seeking to exclude all evidence obtained from the allegedly illegal stop and frisk. After a two-day suppression hearing and full briefing by the

---

[1] D.I. 36.

[2] D.I. 38.

[3] For a detailed factual background of this case, please refer to this Court's October 7, 2022 memorandum order that denied Defendant's motion to suppress evidence.

[4] D.I. 14.

parties, the Court denied the motion to suppress on October 7, 2022.[5]  On October 17, 2022, Defendant filed this Motion, seeking re-argument of the previously denied motion to suppress.  The State filed a response[6] on October 21, 2022.  The Motion is ripe for the Court's consideration and decision.

2.  Defendant raised two issues in this Motion.  First, Defendant contends that the manner by which Officer Crumlish [7] searched Defendant exceeded the permissible scope of a *Terry* stop and frisk and amounts to a custodial search. Defendant argues that, because the officers lacked probable cause to arrest Defendant under the circumstances, the custodial search was illegal and all evidence obtained from that search should be excluded.  Second, Defendant argues that the officers lacked probable cause to search his vehicle, and relies upon a case not previously referenced in Defendant's motion to suppress or supplemental briefing.

3.  As to the first issue, Defendant cited to relevant portions of Officer Crumlish's testimony during the suppression hearing. [8]   Specifically, Officer Crumlish testified that he "immediately felt for [Defendant's] waistband" when he

---

[5] D.I. 35.

[6] D.I. 38.

[7] Two Wilmington Police Department officers, Justin Wilkers and Logan Crumlish, were involved in the investigation and arrest of Defendant.  Officer Crumlish was the one who conducted the frisk that was at issue here.

[8] The Court held a two-day suppression hearing on June 24 and July 13, 2022.  Only portions of the July 13 testimony are relevant in deciding this Motion, to which this Order will cite as "July 13 Hr'g. Tr. at [page number]."

started the pat-down search.[9] Officer Crumlish also testified that his thumb "crossed" Defendant's waistband and was "probably" inside the waistband when he recognized the handgun magazine.[10] Defendant argues that the intrusion into Defendant's clothing amounts to a custodial search that could not have been conducted without probable cause.

4. The Court agrees that the record shows that Officer Crumlish's thumb went across Defendant's waistband while he engaged in a pat-down search for weapons on Defendant's person. However, that single fact does not mean the search exceeded the limits of a legitimate *Terry* search. While the Court acknowledges that *Terry* pat-downs are generally limited to the outer clothing, what the United States Supreme Court stated in *Terry v. Ohio* is that the search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer."[11]

5. Defendant contends that a single finger that crossed his waistband exceeds the permissible limit of a *Terry* frisk without citing any cases to support this position.

---

[9] July 13 Hr'g. Tr. at 76.

[10] *Id.*

[11] *Terry v. Ohio*, 392 U.S. 1, 30 (1968). *See also U.S. v. Hawkins*, 830 F.3d 742, 745 (8th Cir. 2016) (recognizing that, although a pat-down is often the least intrusive way to search for a hidden firearm, it is not the only permissible way to conduct a *Terry* frisk and "concern for officer safety may justify lifting clothing or even reaching directly for a weapon in a waistband") (internal citations omitted).

The Court's independent research shows that, in numerous instances, searches that arguably went beyond the outer clothing of the suspect were still found to be valid *Terry* searches.[12] Here, it is one of Officer Crumlish's fingers, to wit: his thumb, that went slightly across Defendant's waistband. Officer Crumlish did not insert his whole hand into Defendant's waistband or pants to feel around. Nor did he reach into Defendant's pockets or in any way expose Defendant's skin or undergarments to the air. The Court finds that Officer Crumlish's search was limited to an intrusion reasonably designed for its intended purpose and did not exceed the scope of a valid *Terry* search.

6. As to the second issue raised by Defendant in this Motion, Defendant attempts to rehash an argument already decided by the Court in its October 7, 2022

---

[12] *See Adams v. Williams,* 407 U.S. 143, 148 (1972) (holding a police officer's direct reach to the suspect's waistband for a fully loaded revolver, when the officer was previously informed that the suspect carried a gun at his waist, constituted a reasonable, limited intrusion designed to insure his safety under *Terry*); *see also U.S. v. Wright*, 712 Fed. Appx. 868, 871 (11th Cir. 2017) (finding it within the boundary of a *Terry* search when the officer "raised the back of the defendant's long, baggy shirt no higher than necessary to view his waistband and pat down his back pockets because the intrusion was "designed to discover a gun" and was "balanced against the necessity of the search"); *U.S. v. Estrella Moreno*, 2019 WL 1792302, at *7-8 (D. Neb. Apr. 24, 2019) (finding the officer's targeted frisk not overly intrusive when he "reach[ed] his hand slightly inside the left edge of [the defendant's open] blanket to touch the bulge through [the defendant's] shirt").

order.[13] Defendant cites to a recent case decided by this Court, *State v. Jernigan*,[14] which was not referenced in Defendant's prior court filings. The *Jernigan* case, however, does not dictate the outcome of this Motion. Defendant appears to argue that the Court has misapprehended the applicable law, as articulated in *Jernigan*, which should change the outcome of its decision. Defendant's argument is misplaced as *Jernigan* is readily distinguishable from the instant case.

7. In *Jernigan*, this Court held that the police officers lacked probable cause to search the defendant's vehicle, after smelling the odor of raw marijuana. There, the court's ruling was based on the fact that the defendant was a registered qualifying patient under Delaware's Medical Marijuana Act ("DMMA") in possession of a valid DMMA card, and such information was readily available to the police officers through a DELJIS search.[15] Defendant argues that the officers in the instant case should have also determined whether Defendant held a medical marijuana card before searching his vehicle.

---

[13] A motion for re-argument in a criminal case is governed by Superior Court Civil Rule 59(e). *State v. Brinkley*, 132 A.3d 839, 842 (Del. Super. 2016). "A motion for reargument is not an opportunity for a party to rehash arguments already decided by the Court or to present new arguments not previously raised." *Id.* (internal citations omitted). "A motion for reargument pursuant to Rule 59(e) will be granted only if 'the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision." *Id.* (internal citations omitted).

[14] 2019 WL 2480808 (Del. Super. June 13, 2019).

[15] *Id.* at *3-9.

8. Defendant's argument is without merit. In its October 7, 2022 order, the Court relied upon a Delaware Supreme Court case, *Valentine v. State*,[16] for the position that the smell of marijuana, raw or burnt, is still relevant to determining probable cause for a valid vehicle search, even with the DMMA in place.[17] Indeed, in *Jernigan,* the court acknowledged that *Valentine* "stands for the principle that [the DMMA] do[es] not change well-established search and seizure law."[18] The *Jernigan* court, however, stated that the defendant's situation in *that* case presented a different issue than the *Valentine* defendant's "generic reference to the [DMMA]." The *Jernigan* court noted that, rather than a case "where defendant claims a sweeping abrogation of search and seizure law," the defendant there possessed a valid DMMA card at the time of the search and was statutorily immune from arrest or prosecution.[19] The *Jernigan* court further stated that "[t]o give DMMA effect, when one possesses a valid registry identification card, and an officer knows that he or she does, that person's status must factor into the totality of the circumstances."[20]

---

[16] 207 A.3d 166 (TABLE), 2019 WL 1178765 (Del. Mar. 12, 2019).

[17] October 7, 2022 Order, at 16-17. The *Valentine* court held that the totality of the circumstances in that case, including vehicle speed, time of day, and the odor of marijuana, were sufficient to establish probable cause to search the defendant's vehicle. *Valentine*, at *2. Defendant did not argue that the Court's reliance upon *Valentine* is incorrect.

[18] *Jernigan*, at *6.

[19] *Id.*

[20] *Id.*

6

9. As discussed above, the *Jernigan* court, in distinguishing that case from *Valentine*, put a fair amount of emphasis on the fact that the defendant there *actually* held a valid DMMA card.[21] That distinct fact is clearly not present in the instant case. Therefore, the Court finds *Jernigan* distinguishable and again holds, under the guidance of *Valentine*, that the totality of the circumstances in this case supports a finding of probable cause that justifies the search of Defendant's vehicle.

For the reasons stated above, Defendant's Motion for Re-argument is hereby **DENIED**.

      **IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

Original to Prothonotary

Cc:    Karin M. Volker, DAG
        Joseph W. Benson, Esquire

---

[21] *Jernigan* found that the police officer, although unaware of that fact at the time of the search, should have verified the defendant's status as the information was readily available through a DELJIS query. *Id.* at *9.